# State *ex rel.* Covington *v.* Thompson.

*Quo Warranto Proceedings as to Office of County Su-
perintendent of Education.*

1.  *Constitutional law; detention of general law contra-distinguish-
    ed as to local law.*—A law that is general in its terms and
    is in good faith so framed, that parts of the State may come
    within its operation, is a general law within the meaning of
    the constitution; and the fact that at the time of its passage
    there may be in the State certain localities where there are no
    objects for its present operation, or where there are special

[State *ex rel.* Covington v. Thompson.]

laws already in existence, which must be repealed before the general law becomes operative therein, does render such law any the less general law.

2. *Same: the general election law a general and not a local law.* The act of the Legislature providing for the holding of general elections in the State of Alabama (Acts, 1903, p. 438), is not rendered a local law by the reason of the provision of section 106 of said Act which provides that the provisions thereof should apply to all primary elections, and all elections by counties and municipalities held in the State, "except in cases where the provisions thereof are inconsistent, or in conflict with the provisions of a law governing special primary, county or municipal elections."

3. *Constitutional law; when term of office of County Superintendent of Montgomery County expires.*—Under the Act "to provide for the election of the County Superintendent of Education of Montgomery County," approved Feb. 7th, 1899, (Acts, 1898-99, p. 676), providing that the County Superintendent of Education of Montgomery County should be elected at the general election to be held on the first Monday in August, 1900, and at the general election every four years thereafter in the same manner as the other officers are elected; and that the term of office of said County Superintendent "shall begin on the first day of October next following such election and that he shall hold said office * * * * * under the laws governing public schools, and until his successor is duly qualified," a change of time in the holding of the general election in the State to November, has the effect only to postpone the time of the change in the office of County Superintendent of Education of Montgomery County until the new officer can be elected at the general election in November, and until he has qualified— the old officer simply holding over until his successor has been elected at the general election in November, and has qualified thereafter.

APPEAL from the City Court of Montgomery.

Heard before the HON. A. D. SAYRE.

The proceedings in this case were had on an information in the nature of *quo warranto* filed by the State of Alabama on the relation of G. W. Covington against J. A. Thompson, on Nov. 24th, 1904.

In the petition it was averred that the relator was a resident citizen of the county of Montgomery and State of Alabama, and had been such for a number of years;

that the office of County Superintendent of Education for Montgomery County was an office established by an act the Legislature of Alabama, approved Feb. 27, 1899; that in said Act it was provided that the County Superintendent of Education of Montgomery County should be elected at the general election to be held on the first Monday of August, 1900, and at the general election every four years thereafter; and that the term of said office should begin on the first day of October next following such election, and that the person elected should hold such office and perform all the duties thereof under the laws governing public schools, and until his successor was duly qualified.

It was then averred that on the first Monday in August, 1900, the respondent, J. A. Thompson, was elected County Superintendent of Education for Montgomery County, and on the first day of October, 1900, entered upon the discharge of his duties as such, after having been duly qualified and received his commission, and that at the time of filing the petition the term of office of said J. A. Thompson had expired, and his right to hold said office had ceased; that on the 8th day of November, 1904, at a general election held in Montgomery County, in the State of Alabama, the relator, G. W. Covington, was elected County Superintendent of Education for Montgomery County, and on the 15th day of November, 1904, he made his bond and duly qualified as such County Superintendent of Education. and there was issued to him a commission signed by the Governor and Secretary of State; that after so qualifying and having a commission issued to him, the relator called upon J. A. Thompson and demanded possession of the books and papers relating to the office of Superintendent of Education of Montgomery County; and that he be allowed to exercise the duties of said office; that, notwithstanding such demand, the said Thompson refused to comply therewith, and that the said Thompson. at the time of the filing of the petition, was usurping and unlawfully holding and exercising the said office of County Superintendent of Education of Montgomery County.

[State *ex rel.* Covington v. Thompson.]

It was then averred that the right of said J. A. Thompson to hold said office, or exercise any of its powers, duties or privileges terminated upon the relator's qualifying as County Superintendent of Education, as hereinabove stated; and that by virtue of his said election and qualification the relator is entitled to hold said office and exercise all of the powers, duties, privileges and liberties of the same.

The prayer of the petition was that process issue, requiring the respondent, J. A. Thompson, to appear and answer, and show by what warrant he claims to exercise and enjoy the powers, duties and privileges of the office of County Superintendent of Education of Montgomery County and that upon a hearing of said cause, judgment may be rendered, excluding the said J. A. Thompson from said office and declaring that the relator, G. W. Covington, was entitled to the same.

The respondent filed an answer, in which he averred the following facts: That he was duly elected County Superintendent of Education of Montgomery County on, to-wit, the first Monday in August, 1900, and took the oath of office and gave bond and otherwise complied with the provisions of law and entered upon the discharge of the duties of said office on, to-wit, the 1st day of October, 1904, no successor to him had been elected, and the State Superintendent of Education called upon him to give a new bond with sureties as such County Superintendent of Education, which he did in all respects as required by law, which said bond was duly approved and he continued to act as such County Superintendent. For further answer, this respondent saith that under the law his term of office began on October 1st, 1900, and continues till his successor is duly qualified. That G. W. Covington was elected County Superintendent of Education of Montgomery County at the general election held on to-wit, the 8th day of November, 1904, and that under the law his term of office begins on the 1st day of October next following such election, and on to-wit, the 1st day of October, 1905, and that until such date the said Covington's term does not begin and he has no right to be inducted into said office. Demurrers were filed by the

petitioner to this answer which demurrers were over-ruled; but under the opinion on the present appeal it is unnecessary to set out these demurrers in detail.

After the overruling of the demurrer of plaintiffs to the answer of the defendant, J. A. Thompson, as shown by the judgment entry, the following evidence was in-troduced: It was proven that the relator, G. W. Cov-ington, was over forty years of age, and was a resident citizen of the county of Montgomery, and had been such citizen of the county of Montgomery and State of Ala-bama, and of the United States, and a qualified elector in said State and county, and for more than fifteen years last past, and still is such a citizen, resident and quali-fied elector; that the office of county Superintendent of education of Montgomery county was an office establish-ed by the legislature of the State of Alabama, and that by an act of the legislature of Alabama, approved February 7th, 1899, it was provided that the county superintend-ent of education of Montgomery county should be elected at the general election to be held on the first Monday in August, 1900, and at the general election every four years thereafter, as the other county officers are elected; that the term of the office of county superintendent of education should begin on the first day of October next following such election, and that he should hold such office and perform all the duties thereof under the laws governing public schools, and until his successor is duly qualified.

That J. A. Thompson was elected county superintend-ent of education of Montgomery county at the general election in August, 1900, and on the first day of October, 1900, entered upon the discharge of his duties as such, having taken the oath of office, given bond and otherwise complied with the provisions of law regarding the same. That on the first day of October, 1904, no successor to him had been elected, and the State Superintendent of Education called upon the said Thompson to give a new bond with sureties, as such county superintendent of ed-ucation, and in all respects as required by law, which said bond was duly approved, and he continued to act as such county superintendent of education; and that on the

8th day of November, 1904, at the general election for the State of Alabama, and held in the county of Montgomery, G. W. Covington was elected county superintendent of education for Montgomery county, Alabama, and on the 15th day of November, 1904, he made his bond and qualified by taking the oath of office, and did everything else requisite to said qualification; that on said last named date his bond as such county superintendent of education was approved by the judge of probate of Montgomery county, Alabama, and a certified copy of said bond was on said date filed with the State superintendent of education, and a commission issued to him, the said Covington, by the governor and secretary of state of the State of Alabama, as such superintendent of education for Montgomery county, Alabama, on said last named date. That immediately thereafter, and before the filing of the petition in this case, the said Covington called upon the said Thompson and demanded possession of the books and papers relating to the said office, and demanded to be placed in charge of the same, and to be allowed to exercise the duties of said office, but notwithstanding this demand the said Thompson refused to do so, and continues to act as such county superintendent of education.

Upon the introduction of all the evidence, the court rendered a judgment declining to grant the relief prayed for, and ordering the petition dismissed. From the rendition of this judgment the relator duly excepted.

The relator appeals and assigns as error the overruling of the demurrer to the respondent's answer, and the judgment of the court refusing to grant the relief prayed for, and dismissing the petition.

STEINER, CRUM & WEIL, for appellants.—As soon as relator, said G. W. Covington, qualified, after his election in November, 1904, he was *co instanti* entitled to the office. Where an act of the legislature provides for the election or appointment of officers at fixed intervals, without providing when the officers shall go into office, the term of office commences immediately upon the election, or as soon thereafter as the officer qualifies.—23

[State *ex rel.* Covington v. Thompson.]

Am. & Eng. Ency. Law, (2d ed.) p. 411.. and his term of office continues until the next period for election or appointment.—23 Am. & Eng. Ency. Law, (2d ed.) p. 413.

In the case of the *State ex rel. Simpson v. May,* 49 Ala. 376, it was held where the court was construing a similar law that the expressions used in the general election law fixes the term of office; and, if this be true, then the theory upon which the learned judge below based his opinion· was erroneous. See also *Attorney-General v. Lamplough,* 3 Eng. Law Rep. ex. D. 227; *Savings Bank v. Collectors,* 3 Wall N. S. 495; *Ex parte Crowe,* 109 U. S. 556; *Ogden v. Boreman,* 20 Utah 98. "If a statute or constitutional provision, fixing or limiting the duration of an official term is ambiguous, that interpretation should be followed which limits the term to the shortest time."—23 Am. & Eng. Ency. Law, 409.

The appellee having held the office for the full period, he is estopped from denying that his term of office has expired.—23 Am. & Eng. Ency. of Law, 417, 418.

RAY RUSHTON, *contra.*—The act to provide for the election of the county superintendent of education of Montgomery county, (Acts 1898-99, p. 676), fixed the term of the office of the county superintendent, and provided when the person elected to such office should enter upon the duties thereof—the 1st of October next succeeding the general election. The act of 1903, to regulate elections, says nothing about the terms of office of any particular officer. It does not purport to repeal, nor does it repeal, any part of the act above quoted. The act says that the county superintendent must be elected at the general election to be held on the first Monday in August, 1900, and at the general election every four years thereafter, and the only effect that the act of 1903 has on this act, is that it changed the general election to be held every four years to November instead of August. No specific term being fixed by the act, except by the implication that his office should expire when the new term begins, it seems very clear that Covington's term does not begin until the 1st day of October next following the

general election held in 1904, and that Thompson's term of office does not expire until his successor is duly qualified. Covington is not "duly qualified" until his term of office begins. The act above quoted is complete within itself, and the general election law, as above stated, does not amend or repeal any of its provisions, nor does it attempt to do so.

Legislative intent can only be gathered from the words of their legislative acts, unless there is something indefinite and inconsistent in them, but where every provision of an act can be given operation, there is no room for any constructon. This act simply falls in, by reason of its own wording to the changed condition of affairs, brought about by the changed date of the election, and adjusts itself accordingly, and there is nothing in the constitution or laws to prohibit its so doing. "Statutes may be repealed by implication; the courts do not, however, favor such repeal, and if by a fair and reasonable construction of the latter and former statute, the two can be reconciled, and each left to operate, that construction will be adopted.—*Smith v. Speed,* 50 Ala. 276; *Iverson v. State,* 52 Ala. 170; *Enloe v. Rike,* 56 Ala. 500; *Parker v. Hubbard,* 64 Ala. 203; *Cook v. Meyer,* 73 Ala. 580; *Roberts v. Pippin,* 75 Ala. 103; *Jackson v. State,* 76 Ala. 26; *Herr v. Seymore,* 76 Ala. 270; *Jones v. Drewry,* 72 Ala. 311; *Lehman v. Robinson,* 59 Ala. 219; *Ex parte Dunlap,* 71 Ala. 73.

"When the words are plain, and unambiguous, there is no room for a construction or interpretation; the legislature must be intended to mean what they clearly expressed."—*Carlisle v. Godwin,* 68 Ala. 137; *Reese v. State,* 73 Ala. 18; *Lehman v. Robinson, Ib.*

SIMPSON, J.—In order to get a clear idea of the legal status of this case, we will state first the substance of the various statutes relating to county superintendents of education, going as far back as necessary to an understanding of the case: Under the Code of 1876 and 1886, they were all appointed by the State superintendent, and their terms commenced on the 1st of October of each odd year, and continued for two years, and until their suc-

cessors should qualify.—Code of 1876, §§ 907, 916; Code of 1886, §§ 954, 955.

On February 13, 1889, an act was passed providing that county superintendents should be elected at the general election to be held on the first Monday in August, 1890, and every two years thereafter, at the general election, in the same manner as the other county officers, their terms of office to begin on October 1, 1890. *Provided,* that this act should not apply to Montgomery and several other counties named.—Acts 1888-9, p. 396.

The Code of 1896, then, following this act, provided that "unless by special act it is otherwise provided, a county superintendent for each county is elected at each general election as provided in this Code."—§ 3550 (954). The section provides that "the term of office of county superintendents who are elected shall commence on the first day of October next after their election, and the term of those appointed shall commence on October 1st of each odd year," and "in each case shall be for two years, and until their successors shall qualify."—§ 3551 (955).

The same Code provides for general elections on the first Monday in August, and that a county superintendent shall be elected, except in cases otherwise provided for by special laws, on the first Monday in August, 1898, and every two years thereafter.

On February 7th, 1899, "An Act to provide for the election of the county superintendent of education of Montgomery county," was passed, providing that said superintendent should be elected at the general election to be held on the first Monday in August, 1900, and at the general election every four years thereafter, in the same manner as other officers are elected. "And that the term of office of said county superintendent of education shall begin on the first day of October next following such election, and that he shall hold said office and perform all the duties thereof, under the laws governing public schools, and until his successor is duly qualified."

As stated in a case recently decided by this court, the words "until his successor is elected and qualified" (or as in this case, "until his successor shall qualify") were

[State *ex rel.* Covington v. Thompson.]

never intended to prolong the term of office beyond a reasonable time, after the election to enable the newly elected officer to qualify."—*Prowell v. State, ex rel Hasty,* decided at the present term.

We held also, in that case, that the election law (Acts 1903, p. 438) did not change the term of office of any officer. The fact that, in that case, the party holding was in the occupation of a constitutional office does not affect the principle above alluded to. Hence, it follows that, whatever may be the rights of the relator, the official term of the defendant terminated not later than a reasonable time after the 1st of October, 1904.

But it is claimed that the entire election law is a local law, under § 110 of the Constitution, and consequently could not be enacted without the notice required by § 106 of the Constitution. This contention is based on the fact that § 106 of the act states that "All the provisions of this act shall apply to all primary elections and all elections by counties and municpalites held in this State, except in cases where the provisons hereof are inconsistent or in conflict with the provisions of a law governing special primary, county or municipal elections." So the question arises, first, is the general election law a general law or a local law?

Constitutions are made for practical purposes, and not merely for the exercise of critical gymnastics, and in the construction of them we are to take into consideration the conditions which confronted the constitution-makers, and we are, if possible, to give the instrument such construction as will carry out the intention of the framers, and make it reasonable rather than absurd.

At the time of the adoption of this Constitution there were, in existence in the State of Alabama, a great many local laws, many of them wise and desirable to the people of the locality, and the very fact that the same Constitution provided a way by which the people could have more local laws enacted, shows that it was the policy of the State to continue many local laws in force. Can it then be, for a moment, supposed that the constitution-framers intended that no general law could ever be enacted, making provisions different from these local laws,

without repealing all of them? For that would be the inevitable result, if it be acknowledged that the fact that the exception in favor of existing local laws, renders the law a local and not a general law.

We have not been able to find, in any State constitution, a section just like ours, which defines what a general law is, but, before the adoption of our Constitution, our own Supreme Court, and some others had defined a general law, in just about the terms of our Constitution. *Holt v. Mayor & Aldermen of Birmingham,* 111 Ala. 369, 373.

While the decisions of other States are not in harmony as to the practical working of a general law, under these definitions of it, yet it is evident that to give this constitutional provision too strained and strict a construction would practically block the wheels of legislation.

We could not pass any general law to protect the pine forests of Alabama, because there are no pine forests in some of the counties; we could not legislate in regard to the public schools in the counties of Alabama, because Mobile county is, by the Constitution, excepted from the provisons of any such act; nor could we enact any law in regard to railroads in Alabama, because there are some political subdivisions of the State which have no railroads.

While, as we have intimated, there are decisions in some of the States, which indicate so strict a construction of similar constitutional provisions, as to result in such a state of affairs, as above allued to, yet, in taking up this new provision of our Constitution, we prefer to follow authorities which we hold to be based on sounder reason, and to give to this constitutional provision such a construction as will effectuate the intention of its framers, and, at the same time, give it a practical interpretation, which will make it useful and not harmful to the interests of the State.

The Supreme Court of New Jersey, in discussing a case, in which the question of local or general law was at issue (and in which it considered that it should "emancipate itself" from the bondage of verbal definitions) uses this language: "When we find that the adoption of the

narrow signification of the term used will lead to positive absurdity, and that the reception of the word in its wider import is attended with the establishment of a rule of public policy, both wise and salutary, it is not difficult to make choice between the alternatives."—*Van Riper v. Parsons,* 40 N. J. L., p. 5.

And, in the same case on second appeal, in deciding that the law, general in its terms, "abating legislative commissioners for the regulation of municipal affairs wherever they existed," was a general and not a local law, notwithstanding there was but one city in the State having such commission, says "The law, in all its provisions, is general; *broad enough to reach every portion of the State.* * * * A law so framed is not a special or a local law, but a general law."—*Van Riper v. Parsons,* 40 N. J. L. 125.

And the same court held that an act providing for the district courts in all cities of 15,000 inhabitants or more, and an amendment thereto raising the population required to 20,000, were both general laws, because it was a proper classification and did not omit any subject or place naturally belonging to such class, although the amendment affected only one city.—*Rutgers v. New Brunswick,* 42 N. J. L. 51.

The Supreme Court of Pennsylvania, under a constitution prohibiting the passage of "any local law" on certain subjects, sustained an act in regard to the bonding of cities of certain population, and the court says: "It is true the only city in the State, at the present time, containing a population of 300,000 is the city of Philadelphia * * * Pittsburg is rapidly approaching that number * * * Legislation is intended not only to meet the wants of the present, but to provide for the future." And after mentioning the various instances in which general public interests along certain lines must be provided for by general laws, classifying the subjects of legislation, the court says "we will not presume that the framers of that instrument, or the people who ratified it, intended that the machinery of their State government should be so bolted and riveted down by the fundamental law as to be unable to move and perform its

necessary functions."—*Wheeler v. Philadelphia,* 77 Penn. St. 338, 349, 351.

The Ohio Supreme Court held that an act requiring certain things of owners of street cars, was a general law and of "uniform operation throughout the State," and goes on to show that a statute is of uniform operaation, if its terms make it applicable to all of a certain class in the State, though in certain localites there be none of that class, but whenever they come into existence the general law applies to them.—*State v. Nelson,* (51 Ohio St) ; 26 L. R. A. 317, 319.

And so in a case in California, where an act made a change in the police courts in cities of certain population, and provided that it should go into effect in each one, at the expiration of the various terms of incumbents, and it was claimed that it was not of uniform operation, because it took effect at one time in one city and at another in another. The law was sustained, and the court says, "If the law operates equally upon all the objects embraced within it, *when they come within the circle or scope of its authority,* the uniformity of operation contemplated by the constitution is attained."—*People v. Henshaw,* 76 Cal. 436, 444.

Then coming to the particular provision of our own Constitution (§ 110), to-wit, that a general law is a law which applies to the whole State: One of the definitions of the word "apply" is to declare, or pronounce, as suitable.—Webster's International Dic. Every criminal statute applies to every individual in the State, yet it does not become effective in its application to him until he brings himself into actual contact with it, by committing some crime.

Following the reasoning of the cases cited, we hold that, under the wording of said section of our Constitution, a law which is general in its terms, and is, in good faith, so framed that all parts of the State may come within the circle of its operation, is a general law. And the fact that, at the time of its passage, there may be, in the State, certain localities where there are no objects for its present operation, or where there are special laws already in existence which must be repealed before the

general law becomes operative therein, does not render it any the less a general law.

Consequently the election law of 1903, is a general law, even if it be admitted that § 106 of that law is intended to except out of its operation those localities which have special election laws, as to certain officers, which is by no means clear, but which would be the result if they were not mentioned at all, unless there was a clear intent shown to repeal them.

It may be said also, even under the contention of the appellee as to the status of the county superintendent in Montgomery county, and others in the same attitude, this law does apply to the whole State. While it is true that, if under that special law the county superintendent holds for four years, the general election law would not change the term of his office, yet it would change the date of his election, as that special act refers to the general election law, as to the time and manner of his election, so that, to that extent, at least, the general law applies to the election of county superintendents in Montgomery county, besides applying to it and every other county in provisions on the subject of election of other officers.

We hold that the principles announced in the Prowell case are applicable to county superintendents, whose terms, under the previous law, expired on the 1st of October, after the August election, and that the effect of the change of the time of election, only postpones the time of the change of officers until the new officer can be elected and qualified, the old officer simply holding over until his successor has been elected and qualified.

In the case now before the court, the statements of the various statutes in the former part of the opinion, shows that the position of county superintendent in Montgomery county is not even as favorable as those holding under the general law, for the act of February 13th, 1889, simply left the Montgomery superintendent where he was before, enjoying a two years' term, by appointment, in place of by election; and the act of February 7, 1899, simply applied the elective feature to him, providing that he should be elected on the first Monday in August, as

other officers at the general election, thus practically eliminating the local features and placing him on the same platform as other superintendents; for the title of that act does not contain any intimation of a purpose to change the term of his office. Consequently that part of the act falls to the ground, and appellee's term of office really expired two years before the first day of October, 1904.

The judgment of the court is reversed and a judgment will be here entered, declaring that the appellee. J. A. Thompson, is not entitled to hold the office of superintendent of education of Montgomery county, but that the relator, G. W. Covington, is entitled to said office.

Reversed and rendered.

MCCLELLAN, C.J., HARALSON, TYSON, DOWDELL, ANDERSON and DENSON, J.J., concurring.