# State, *ex rel.* Gunter, *et al. v.* Thompson, *et al.*

## *Quo Warranto.*

(Decided May 13, 1915. Rehearing denied June 30, 1915. 69 South. 461.)

1. *Municipal Corporation; Legislative Control.*—The legislature has ample authority to alter or amend the powers and charters of municipal corporations within the state, by general law, and to repeal, by general or local law, the charter of any such corporation.

2. *Constitutional Law; Legislative Department; Judicial Encroachment.*—So long as they contravene no provision of the organic law, the propriety and wisdom of the acts of the legislature are questions exclusively for the legislative department, and the courts will not inquire concerning the motives and purposes of the legislature in order to find merit or demerit in its acts, except as they are disclosed on the face of the act, or may be inferred from their operation, when considered with reference to existing legislation and such

other general conditions as every court must be presumed to know and understand.

3. *Statutes; Constitutional Provision; Subject and Title.*—There is no cause of objection to the subject and title of an act, under section 45, Constitution 1901, so long as the generality of the title is not made a cover for legislation incongruous in itself, and which by no fair intendment can be considered as having necessary or proper connection with its parts.

4. *Same.*—The provisions of section 45, Constitution 1901, is not violated by Acts 1915, p. 52, amending Acts 1911, p. 289.

5. *Same; Provisions; Body of Acts.*—Section 45, Constitution 1901, is not violated by Acts 1915, p. 52, amending Acts 1911, p. 289, on the ground that the body of the act created a board of public safety to govern the police and fire department, since the police commission which was abolished by the Acts of 1911 had been created by previous acts and was not the board of public safety as therein established.

6. *Same; General Law; Local Law.*—The act approved February 5, 1915, Acts 1915, p. 52, amending Acts 1911, p. 289, does not violate section 104, Constitution 1901, when viewed in the light of section 110, Constitution 1901, since a law is general when so framed in good faith that by its terms it shall apply to all parts of the state coming within its scope and purposes, and since a law applying to a general class of cities into which other cities may enter or from which they may pass by increase or decrease of population is not a special but a general law, as the grade of the city is not designated by the act, but depends upon its growth and population.

7. *Same; Classification.*—Such act does not violate the constitutional provision that the legislature shall deal with municipal charters only through general laws, as population affords a substantial basis for the classification of cities in respect of the powers and privileges to be conferred upon their local government, and as the Constitution does not require uniformity throughout the state in respect to municipal charter powers, although its necessary effect is to bring about such uniformity, except as limited by the common sense of the recognized principles of classification.

8. *Municipal Corporation; Charters.*—Municipal charters are legislative enactments conferring upon local agencies some of the governmental powers of the state.

9. *Statute; General Law; Saving of Local Law.*—The act of February 5, 1915, amending the act of April 6, 1911, which, under existing conditions, applies only to the city of Montgomery, preserving the salary of the present board of commissioners in office and the tenure of the office until the end of the current term, does not violate the constitutional provision that the legislature shall deal with municipal charers only by general laws, such being merely a temporary saving of a detail of a previous general law.

APPEAL from Montgomery City Court.

Heard before Hon. HORACE STRINGFELLOW, Special Judge.

[State, ex rel. Gunter, et al. v. Thompson, et al.]

Information in the nature of quo warranto by the state of Alabama on the relation of W. A. Gunter and others, against J. A. Thompson and others, acting as a Board of Public Safety for the City of Montgomery. Judgment for respondents and relators appeal. Affirmed.

W. A. GUNTER, and EDWARD S. WATTS, for appellant.

RUSHTON, WILLIAMS & CRENSHAW, and HILL, HILL, WHITING & STERN, for appellee.

SAYRE, J.—Appellees are exercising authority as a board of public safety for the city of Montgomery by virtue of an act entitled: "An act to amend an act entitled 'An act to provide and create a commission form of municipal government and to establish same in all cities of Alabama which now have or which may hereafter have a population of as much as twenty-five thousand and less than fifty thousand people, according to the last federal census, or any such census which may hereafter be taken; to regulate the selection and election of commissioners and their terms of office and recall from office, to fix their powers, duties and compensation, to punish improper conduct in connection with elections and petitions hereunder; to abolish police commissioners, aldermen and certain other city officials, and otherwise provide for the creation and maintenace of said commission form of government,' approved April 6, 1911."

This amendatory act was passed over the Governor's veto February 5, 1915. Acts 1915, p. 52. This proceeding, an information in the nature of quo warranto, attacks the constitutional validity of the last act on various grounds.

(1, 2) In the beginning we note that the Legislature has ample authority to alter or amend the charter powers of municipal corporations in this state by general law and to repeal by general or local law the charter of any such corporation.—*Ensley v. Simpson,* 166 Ala. 366, 377, 52 South. 61. It must be borne in mind, also, that the propriety and wisdom of the acts of the Legislature, so long as they contravene no provision of the organic law, are questions peculiarly and exclusively within the decisive right of that department of the government, and the courts have no right to bring them under review on the ground that, apart from the Constitution, they are unwise or run counter to sound governmental policy.—*Meyer v. Greene,* 154 Ala. 249, 46 South. 268. And, since much has been said in oral argument and in briefs with the apparent purpose of impressing upon this court the idea that the act in question was inspired by sinister notions—is, in fact, a fraud upon the Constitution and the previous organization of the only municipality to which, in present conditions, the act applies—it will be well to add that the judicial department is wholly without authority to institute an inquiry concerning the motives or purposes of the Legislature in order to find in its enactments merits or demerits, except as they may be disclosed on the face of the acts, or may be inferred from their operation, considered with reference to previously existing legislation and such other general conditions as every court must be presumed to know and understand.—*Hawkins v. Roberts,* 122 Ala. 130, 27 South. 327. These general propositions are without the pale of profitable discussion.

(3, 4) It is contended by counsel for appellants, relators in the court below, that the act in question of-

fends against section 45 of the Constitution, for that so much of it as provides for a board of public safety is not clearly expressed in its title. This act undertakes to restate the entire statutory law of the state on the subject of government by commission in cities having a population of as much as 25,000 and less than 50,000. With the exception of some minor temporary provisions, to be later noted, it is in effect an original act replacing the act of April 6, 1911. It follows closely the last-mentioned act in every particular, except that it provides for three commissioners, one of whom shall by the commission be elected president, instead of a president and four commissioners; and it contains an entirely new provision in which it is declared that no person shall be eligible as a commissioner who, either by election or appointment, shall have held the office of president or member of the commission for there consecutive years within the four years immediately preceding the date of any election of commissioners; it abolishes the office of recorder, the duties of that office being imposed upon one of the commissioners to be designated by the commission; and by section 27 the board of public safety is created. The objection to the act, mentioned above, is planted upon section 27, the effect of which may for the purpose at hand be sufficiently stated as follows: The board of safety consists of three members elective by the Senate in the beginning and every four years thereafter, occasional vacancies to be filled by appointment of the Governor; it exercises "complete and exclusive control and authority" over the police and fire departments, which are taken away from the commissioners, the board of safety increasing or diminishing the number of officers and members of these departments in their discretion. The section pro-

vides that "the salary of the officers and members of said departments shall be paid out of the treasury of any such city upon the order of said board of public safety," the board having the power to fix such salaries; and, we conclude our statement of the substance of the section by saying: "It is hereby expressly made the duty of the said board of commissioners of any such city to make all proper provision and provide for the equipment, maintenance, operation, quartering, supplies and appropriations to defraying the expenses of operation of such department (meaning, as the context shows, both the police and fire departments) to be paid out of the funds of the city, where not in conflict with the provisions of this act, within three days from the date such action is requested in writing of the board of commissioners by the board of public safety."

No legislative powers, unless the fixing of salaries for its officers and agents be such, are given to the board. Its function is to exercise control over the personnel and practical operations of the departments committed to its care.

The main argument on this branch of the case is that the provision for a board of public safety with the powers indicated is a radical departure from the fundamental theory and principle of the commission form of government which, counsel say, consists in the concentration of all municipal powers in a few persons who must be elected by the people and kept directly under their control by various provisions such as the recall, initiative, and referendum, and others calculated to take city government out of politics and to prevent corruption in administration. Hence the conclusion is drawn that the change ingrafted upon the previous government by the creation of an independent board of safety,

elected by the Senate and not subject to recall by the people, is not clearly expressed in the title of the act, which announces the purpose to provide and create a commission form of municipal government.

The most general and comprehensive idea expressed in the title of this act, the expression of legislative purpose to which all else in the title may be, and to which all else in the body of the act must be referred, is "to provide and create a commission form of municipal government." It is the settled construction of the constitutional rule that so long as the generality of the title is not made a cover for legislation incongruous in itself, and which by no fair intendment can be considered as having necessary or proper connection between its parts, there is no cause of objection.—*State v. Street,* 117 Ala. 203, 23 South. 807. Counsel for relators would have the court make to the details of this statute a Procrustean application of a certain conception that has been evolved by their own learned reflection upon ideals of government. But we have been unable to find any authoritative hard and fast definition of the commission form of government that descends into all the details of the plan, nor do we believe any such definition exists in the popular mind. The general idea suggested by the phrase is that of a concentration of all the powers of municipal government in a few persons; of a government by a committee chosen from the community at large, rather than by a mayor and the old familiar board of aldermen, which experience teaches are too often chosen that their first consideration may be given to the interests of parties and the restricted constituencies by which they are elected. It may be conceded that the plan, as thus far developed, usually, though not universally, incorporates popular

elections, the referendum, and the recall, as the plan of this act does in respect of the commission, though not as to the auxiliary board of safety; but it has by no means reached the stage of a scientific formula. It has undergone many modifications in its brief history; several varieties of it are now extant in other states; and it would lay too heavy a burden on the court if it were required to say just what fixed ideas, other than that to which we have referred, the collocation of words commonly employed to describe these forms of municipal government carries in the popular mind, which, it must be presumed, was the mind of the Legislature in the enactment of this law. We feel safe in saying that the act sets up a commission form of government within the broad general meaning of its caption. Whether the plan here is faulty, as counsel insist, consideration of its practical wisdom is not for us, but for the Legislature, the power of which, within the limits set by state and federal Constitutions, cannot be confined, either for causes or persons.—*Davis v. State,* 68 Ala. 58, 44 Am. Rep. 128. That it sets up, in addition to the main commission, another to which it commits the administration of certain important functions of municipal governments—unwisely it may be—does not take the plan without the general idea of a commission form of government.

(5) It is further insisted that the body of the act is not within its title because the title contains the restrictive clause "to abolish police commissioners," whereas the body creates a commission to govern the police, among other things. But the commission that was destroyed by the act of April 6, 1911, had been created by a previous act, and was not the board of public safety established. The present board is a very different

institution. Notice of the purpose to set it up is to be found in the general title of this amendatory act stated above, and so much of the present act as does set it up cannot, arbitrarily and for no better reason that to do so would destroy the act, be referred to a clause of the title with which it has no relation save only that the two employ similar terms in dealing with different entities.

(6) It is further urged by appellants that the act under examination is a local law, and hence violative of section 104 of the Constitution, which inhibits the passage of any local law amending, confirming, or extending the charter of any municipal corporation. The argument for this insistence is based upon the fact, of which the court takes cognizance, that the act under present conditions applies to the city of Montgomery alone, and upon the definition of a "local act" afforded by the Constitution (section 110), which says that a "local law" is a "law which applies to any political subdivision or subdivision of the state less than the whole." The present writer was greatly impressed upon one occasion with the logic of this argument; but this court, as then constituted, unanimously held that the form of logic led to absurd results and refused to follow it.—*Covington v. Thompson,* 142 Ala. 98, 38 South. 679. This court there held that a law is "general within the meaning of the Constitution when so framed in good faith that by its terms it shall apply to all parts of the state when they come within the scope and purpose of the enactment. In *Griffin v. Drennen,* 145 Ala. 128, 40 South. 1016, upon good authority the court admitted differences in population as a proper basis for the classification of municipal corporations. And in *Crenshaw v. Joseph,* 175 Ala. 579, 57 South. 942, the act

of April, 1911, which the present act amends, was sustained against the identical objection now urged against the amendatory act, and on this point the judges sitting in that case were of one opinion. As for any questions raised by this objection, that case and this are identical, and we have not discovered in the briefs of counsel or elsewhere any sufficient reason for disturbing the conclusion then reached. This act operates in only one city as conditions now are, but in terms it applies, and will apply, to all cities that may hereafter come within its class. Legislation is intended not only to meet the wants of the present but to provide for the future, and this court knows that there are several cities in Alabama that may soon come within the class defined by the act.

"The distinction is this: That a law applying to a certain class of cities, fixed by previous legislation, into which other municipal corporations may enter, and from which they may pass into other classes, by increase of population, is not special, but general, since the grade of any particular city is not designated by the act, but depends upon its growth in population, as it may, by such growth, pass from one grade or class to another."—*State v. Ellet,* 47 Ohio St. 90, 23 N. E. 931, 21 Am. St. Rep. 772.

Numerous examples of the application of this principle may be found at page 874 of 21 Am. St. Rep., and elsewhere, in Judge Freeman's note to *State v. Ellet.* The leading brief against the present act employs harsh language in attributing unworthy motives to its framers, and folly, ignorance, and inattention to the Legislature in its passage. But these suggestions, proceeding, so far as we are informed by the record before us, wholly and alone upon the single fact that the act in its pres-

ent conditions operates upon only one city, ignore the reason and authority of the cases we have cited, to which might be added others from eminently respectable courts.

(7, 8)   It is further insisted that under the Constitution the existing charter of no municipal corporation, no matter what it is, or when, or how obtained, can be amended except by a law which does apply to every such charter in the state.   This is nothing more than a husk of the sort this court has found unpalatable in *Covington v. Thompson, supra.* It ignores the doctrine, established by the general consensus of judicial opinion, that numbers afford a substantial basis for the classification of cities and towns in respect of the powers. and privileges to be conferred upon their local governments.   In view of that doctrine, cases circumscribing legislative power in the classification of persons and things by a necessity that such classification must be based upon differences such as naturally suggest the propriety of differences in regulation, cases like *G., C. & S. F. Ry. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, which are written to preserve the federal guaranty of the equal protection of the laws, are without point in the case of municipal charters which are legislative enactments conferring the governmental powers of the state upon its local agencies.   Any effort to classify according to number such persons and things as are within the contemplation of cases of that tenor would be illogical and absurd, while, on the other hand, the effort to arrange the powers and duties of local governmental agencies according to the increasing difficulties and responsibilities that wait upon increasing populations appears to be entirely reasonable. It would seem to be clear, to illustrate, that the machinery sufficient and proper for the government of

a town of 1,000 would be inadequate for the government of a city of 100,000 or 1,000,000, and so likewise there could be no common sense, to the test of which all such questions must come, in burdening the town with the machinery necessary for the city. Cities and towns so different require different legislation. And hence it is that the language of the Constitution does not require uniformity throughout the state in respect of municipal charter powers, though its necessary effect is to bring about uniformity except as it may be limited by the common sense of the universally recognized principle of classification. The requirement is only that the Legislature shall deal with the subject through general laws. To conclude this branch of the case, the right to classify municipal corporations according to substantial differences in population once admitted, the only effect of the constitutional inhibition against local charters is to require that all municipalities in the same class shall be governed by the same charter.—*Cole v. Dorr*, 80 Kan. 251, 101 Pac. 1016, 22 L. R. A. (N. S.) 534; *McNeill v. Sparkman,* 184 Ala. 96, 63 South. 977. In the case last cited the principle of classification was not involved and this court proceeded to its conclusion on a different theory; but the method of constitutional interpretation there adopted supports the decision here reached.

(9) It is further suggested that the provision of the act which preserves the salary of the president of the commission now in office at its present figure, and the tenure of all the present commissioners, until the first Monday in October of the current year, the end of their current term, can apply only to the city of Montgomery, which alone falls at this time within the established class, and hence that the act establishes a dou-

ble classification, and for that reason is local. The effect of the act is to establish a new charter for cities within the class, and, but for the purpose of saving the tenure and salaries of the present commissioners during the term which they are now serving, it might, and probably would, have been cast in the form of an original rather than an amendatory act. The particular feature of the amendatory act, now referred to, is not really an affirmative part of the legislative act. It does not provide or create anything new. It is nothing more than a saving clause. It merely saves temporarily a certain part of a previous general act. The question whether a permanent saving in favor of local laws brought an act, in terms otherwise general, under the constitutional ban against local legislation, was elaborately considered by this court in *Collman v. Pitts,* 160 Ala. 133, 49 South. 441, 686, with the result that the objection to the act was overruled. The present writer so far doubted the soundness of that judgment, though appreciating the embarrassment of legislation to which a contrary ruling would lead, that he withheld his concurrence. The court is now unwilling to depart from the rule of that case. "To consider matters thus adjudged would lead to great public inconvenience." If the act there considered was a general law notwithstanding its saving of local statutes, a fortiori the act here is general notwithstanding its saving of some of the provisions of a general law.

Counsel have argued the question whether the provision of the act that "no person shall be eligible to the office of president or member of the board of commissioners of any such city  *  *  *  who shall, either by election or appointment, have held the office of president or member of the board of commissioners of any

such city three consecutive years within the four years immediately preceding the date of the election of the board of commissioners," is unconstitutional as applied to the present commissioners. This question is moot. It is not raised by the record. Nor can we anticipate that it will ever be raised. Nor would we be justified in any confident assumption of a full acquaintance at this time with all the considerations that may be brought to the court's attention by the parties then in interest should the question be raised in the future. We have therefore not considered it to be the part of wisdom to indicate an opinion, which at best would be advisory only.

We have thus considered the questions raised by the record, and it results from what we have said that we are in accord with the views which have found able expression in the opinion of the learned special judge who heard the case in the court below, and that the judgment must be affirmed.

Affirmed. All the Justices concur.