(85 South. 465)

### REYNOLDS, County Treasurer, et al. v. COLLIER. (5 Div. 744.)

(Supreme Court of Alabama. Jan. 22, 1920.)

**1. Counties ⊜196(3)—Taxpayer may sue to prevent misappropriation of county funds.**

Injunctive relief is the proper remedy by a taxpayer seeking to prevent a misappropriation of county funds.

**2. Evidence ⊜12 — Judicial notice taken of population of counties.**

The court will take judicial notice of the population of counties by consulting the federal census.

**3. Statutes ⊜93(1)—"General law" and "local law" defined.**

Where there is a substantial difference in the population, and the classification is made in good faith, reasonably related to the purpose to be effected and to the difference in population which forms the basis thereof, and not merely arbitrary, it is a "general law," though at the time it may be applicable to only one political subdivision of the state; but if the classification bears no reasonable relation to the difference in the population on which it rests in view of the purpose to be effected by such legislation, and clearly shows it was fixed arbitrarily, guised as a general law, it is a "local law."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Law; Local Law.]

**4. Statutes ⊜8½(1)—Statute relating to salary of judge of county court held a local act enacted without notice.**

In view of Const. 1901, § 110, and Acts 1915, p. 603, fixing the salary of the judges of county courts in accordance with the population of the counties upon a proper classification, Gen. Acts 1919, p. 1114, fixing the salary of the judge of the county court in all counties having a population of not less than 23,150 and not more than 23,250, is a local statute applicable only to Chilton county, though guised as a general law, and, not having been advertised as required by Const. 1901, § 106, is unconstitutional.

**5. Constitutional law ⊜48 — Statute interpreted in favor of constitutionality, if possible.**

It is court's duty to uphold a law when it is fairly susceptible of two interpretations, one of which maintains its constitutionality, and the other of which strikes it down, though the adoption of the former be less natural.

**6. Statutes ⊜68—To be interpreted as general laws if reasonably susceptible of such interpretation.**

Court will not construe law as local if it is so worded and framed as to be reasonably susceptible of interpretation as a general law.

Appeal from Circuit Court, Chilton County; F. Lloyd Tate, Judge.

Bill by F. B. Collier against Grady Reynolds, as Treasurer, and others, to enjoin the payment of the salary of the Judge of Probate of Chilton County, etc. From a decree overruling demurrers to the petition, respondents appeal. Affirmed.

This bill was filed by appellee as a resident citizen and taxpayer of Chilton county, seeking an injunction against the county treasurer and other officials against the misappropriation and mispayment of county funds under the authority of an act approved September 30, 1919.

The bill seeks to prevent the payment by the county treasurer to L. H. Reynolds, as judge of the county court, the increased amount in salary as provided by the above-cited act, entitled:

"An act to fix the salary of the judge of the county court in all counties having a population of not less than twenty-three thousand one hundred and fifty (23,150) and not more than twenty-three thousand two hundred and fifty (23,-250) according to the federal census of 1910, or any subsequent federal census, and provide for the payment of the same."

The act fixes the salary at $900 per annum to be paid in monthly installments, and repeals all laws in conflict therewith. The bill shows that under the general law (Acts 1915, p. 603), the judge of the county court of Chilton county was entitled to an annual salary of $300. The theory of the bill is that the act of September 30, 1919 (Gen. Acts 1919, p. 1114), is a local law under section 110 of the Constitution, intended to apply only to Chilton county, and was not advertised as provided by section 106 of the Constitution, and is therefore void; and the payment of the increased salary under said void act consequently illegal and would amount to a misappropriation of the county funds.

There was demurrer to the bill for want of equity, and from the decree overruling the demurrer the respondents prosecute this appeal.

Thomas A. Curry and G. C. Walker, both of Clanton, for appellants.

The act attacked is a general law, not violative of section 106, Const. 1901. 195 Ala. 83, 70 South. 744; 193 Ala. 561, 69 South. 461; 142 Ala. 98, 38 South. 679. It does not violate section 150 or section 231 of the Constitution. 184 Ala. 283, 63 South. 985; 152 Ala. 554, 44 South. 702; section 6696, Code 1907.

F. B. Collier, of Clanton, for appellee.

The act is a direct violation of sections 106 and 110 of the Constitution. 153 Ala. 648, 45 South. 175. It also violates the provisions of sections 68 and 281 of the Constitution, and was not saved by the provisions

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of section 150. 9 Ala. App. 147, 62 South. 449; 184 Ala. 283, 63 South. 985; 203 Ala. 300, 82 South. 550.

GARDNER, J. [1] Injunctive relief is the proper remedy by a taxpayer seeking to prevent a misappropriation of the county funds. Potts v. Commissioners' Court of Conecuh County, 203 Ala. 300, 82 South. 550; O'Rear v. Sartain, 193 Ala. 275, 69 South. 554, Ann. Cas. 1918B, 593.

By this proceeding we are called upon to review the constitutionality of the act approved September 30, 1919, the title of which appears in the foregoing statement of the case. Section 1 of said act is as follows:

"That all counties having a population of not less than 23,150 and not more than 23,250 according to the federal census of 1910 or any subsequent federal census, there shall be paid out of the county treasury to the judge of the county court of such counties, an annual salary in equal monthly installments nine hundred dollars ($900); the payment of such salary to be by warrant of such judge drawn on the treasury of the county."

[2] The classification as to population by this act is therefore fixed at the narrow margin of 100, and we judicially know, consulting the federal census of 1910, that this act at this time applies only to Chilton county.

The language of section 110 of our Constitution, "A general law * * * is a law which applies to the whole state; a local law is a law which applies to any political subdivision or subdivisions of the state less than the whole," was considered and given a liberal construction in State ex rel. Covington v. Thompson, 142 Ala. 98, 38 South. 679, and has been so frequently treated in subsequent decisions as to need no further elaboration here. Likewise, the provisions of section 106 (Const. 1901), requiring publication as to local laws, has been so often discussed as to be familiar to all; and the "great and growing evil, which needed correction"—for which corrective purpose it was ordained—was very clearly set forth in Wallace v. Board of Revenue, 140 Ala. 491, 37 South. 321. The act here under review was passed without any reference to the provisions of this latter section, and therefore the only question to determine is whether or not the act is a local law within the meaning of section 110 of the Constitution. If so, it must fall.

This court has in several cases recognized differences in population as a proper basis for classification (State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 57 South. 942, Ann. Cas. 1914D, 248; State ex rel. Gunter v. Thompson, 193 Ala. 561, 69 South. 461; Board of Revenue of Jefferson County v. Huey, 195 Ala. 83, 10 South. 744), following in this respect the holding of the Pennsylvania court, the Constitution of which state is similar in that respect to our own, in cases involving the classification of municipalities according to population; the difference in population being such as to suggest substantial basis for a difference in laws concerning the same. In Board of Revenue v. Huey, supra, it was held that where the classification in the act there considered was in good faith, in view of the object sought to be attained, the use of population as a measure of defining the class upon which the act was to operate was not violative of this constitutional provision. In State ex rel. v. Weakley, 153 Ala. 648, 45 South. 175, it was held that the double classification of the act there under review was not a bona fide classification of municipal corporations, and was therefore stricken down as violative of said section of our Constitution.

If the profession and members of the lawmaking body have been impressed from the previous decisions of this court that legislation may be had for any particular locality by the mere fixing, arbitrarily, of a population classification without a compliance with section 106 of the Constitution, they have misconceived the true meaning and effect of those decisions.

In State ex rel. Crenshaw v. Joseph, supra, commenting upon the case of State ex rel. v. Weakley, supra, the court called attention to the fact in that case it was held "that indiscriminate classification as a mere pretext for the enactment of laws essentially local or special cannot be allowed"; and in the same opinion was cited Ayer's Appeal, 122 Pa. 266, 16 Atl. 356, 2 L. R. A. 577, where it was held that the "basis of classification was pushed to such extent as the court was required to pronounce it void." In Board of Revenue v. Huey, supra, speaking to this question of classification, the court said:

"If * * * an element going to mark the distinction or discrimination sought to be established is without reasonable relation to the thing to be effected and the purpose to be accomplished by the legislation, guised as a general law, the legislative effort must fail because the means of attempted classification are inapt and inappropriate, and hence is arbitrary."

[3] And in the Weakley Case, this court sounded a distinct note of warning to the lawmaking department against the passage of laws with classification so drawn as to be an evasion of the Constitution. The effect of all of our decisions, in short, has been that where there is a substantial difference in population, and the classification is made in good faith, reasonably related to the purpose to be effected and to the difference in population which forms the basis thereof, and not merely arbitrary, it is a general law, although at the time it may be applicable to only one political subdivision of the state; but that if the classification bears no rea-

sonable relation to the difference in population, upon which it rests, in view of the purpose to be effected by such legislation, and clearly shows it was merely fixed arbitrarily, guised as a general law, and, in fact, is a local law, it is then in plain violation of the Constitution and cannot be upheld.

[4] Under the provisions of the act of 1915 (page 603), the judges of the county courts were paid different salaries in accordance with the population of the counties, which in every respect it appears was a substantial basis and a proper classification. Under said act the judge of the county court of Chilton county received $300 per annum, while by the terms of the act here considered the salary is fixed at $900 per annum. There can be no pretense whatever either of logic or common sense why in those counties under 25,000 population, and yet lacking 150 or 200 population of coming within the figures as arbitrarily fixed by this act, the county court judges should still receive only $300 per annum (Acts 1915, p. 603), while in this particular county the judge of the county court should receive $600 additional. The classification as to population has not the semblance of necessity, reason, or substantial merit upon which to stand. It was merely arbitrarily fixed so that under the guise of a general law this local legislation was enacted.

We have given these constitutional provisions a broad and liberal interpretation, and we do not recede from the former decisions. The acts heretofore construed contained classifications based upon a very substantial difference in population, which this court was unable to say, with that degree of assurance required, did not form a reasonable basis and therefore give rise to some reasonable necessity for a difference in legislation concerning the several classifications. In this respect such has been left to legislative discretion. These holdings are entirely sound, and we have no intention to depart therefrom. But this question needs no further elaboration. Under the express language of section 106 of the Constitution, the duty rests upon the court to pronounce void every special, private, and local law which the journals do not show were passed in accordance with the provisions thereof.

[5, 6] We fully realize that it is the duty of the court to uphold a law when it is fairly susceptible of two interpretations, one of which maintains its constitutionality and the other strikes it down, though the adoption of the former be the less natural; and that it is our duty not to construe a law as local when it is so worded and framed as to be reasonably susceptible of interpretation as a general law. State v. Pitts, 160 Ala. 133, 49 South. 441, 686, 135 Am. St. Rep. 79. We also fully realize it is a solemn thing to strike down a statute, and we reach this conclusion with unusual reluctance because of the fact we are mindful that other enactments passed by the same Legislature come within the influence of this decision and must likewise fall. Some of them have an even narrower margin of population than that here under consideration. Indeed, to illustrate the extreme to which such legislation seems to have gone, it is not inappropriate to call attention to one of these acts in particular, which is made to apply to counties where the difference in population is but one. Such legislation as we are here considering has been very properly characterized as "classification run mad." To uphold it would be but to sanction the utter emasculation of these provisions of our Constitution, and this court will not hesitate to strike down an act so palpably violative of our fundamental law. As said by Justice Lumpkin of the Supreme Court of Georgia:

"When the question is, whether we shall maintain a statute or the Constitution, which is a paramount law, and which we are constrained by our oath of office to support and defend, we cannot hesitate. We must maintain consciences void of offense, whatever we do or omit to do." Prothro v. Orr, 12 Ga. 36, 40.

We can only interpret this act as fixing a difference of population purely arbitrary and without pretense of reason or necessity, or substantial merit, and therefore, under the guise of classification, is a local law pure and simple. We are convinced beyond all reasonable doubt of the unconstitutionality of the act in question under the averments of the bill, and it must be declared void.

The demurrer to the bill was properly overruled, and the decree will be here affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SAYRE, SOMERVILLE, THOMAS, and BROWN, JJ., concur.