102 So.2d 20

**Mac THOMAS, Judge of Probate, et al.**

**v.**

**T. L. FERGUSON et al.**

**5 Div. 689.**

Supreme Court of Alabama.

April 10, 1958.

384

Robt. J. Teel, Rockford, R. T. Milner, Robt. S. Milner and Holley, Milner & Holley, Wetumpka, for appellants.

McKay & Livingston, Sylacauga, for appellees.

COLEMAN, Justice.

The parties agree that the sole question presented on this appeal is the constitutionality of Act No. 254, approved August 13, 1957, Acts of 1957, Regular Session, page 326.

By its terms, Act No. 254 applies "only to counties having a population of less than 11,800, according to the last or any subsequent federal decennial census." The act relates to the method by which mem-

bers of the county governing body shall be elected in counties subject to the act.

The act provides that the governing body of each such county shall "divide the county into as many districts as there are members of such county governing body, excluding the judge of probate or other chairman thereof," with provisions that such districts shall be formed according to election precinct boundaries, and shall be as nearly equal as practicable in regard to population, miles of existing roads, and area.

The act further provides that upon expiration of the terms of the incumbents, one member of the governing body shall be elected from each of the districts so formed, that each member shall be a resident and qualified elector of the district he represents, and shall be elected by the qualified electors of such district.

Except as otherwise provided in the act, "the compensation, election, term of office, and qualifications of the members, and the powers and duties of the * * * governing body of each county affected by this Act, shall be the same as now provided by law." The purpose of the act appears to be solely to provide for the election of members of the county governing body by the electors of each district and not by the electors of the whole county as provided by general law. Title 12, § 5, Code 1940.

Appellees insist that Act No. 254 is a local law and that notice of intention to apply therefor was required to be published in accordance with § 106 of Constitution of 1901; that such notice was not published; and, therefore, the act is void. No other objection is urged against the validity of the act, and we have not considered any other objection.

Appellants contend that Act No. 254 is not a local law, but is a general law, and, therefore, that publication of notice was not required.

Appellants concede that the act applies to Coosa County only and cannot apply to any other county according to the 1950 federal census. The population of Coosa in 1950, according to the census, was 11,766. The population of the next larger county was 11,904. Appellants argue that because numerous counties in Alabama lost population between 1940 and 1950, we can reasonably expect that other counties will, by 1960, or later, come within the class affected by Act No. 254, and that this reasonable expectation tends to justify the population classification used to determine which counties are subject to the act. State ex rel. Shirley v. Lutz, 226 Ala. 497, 147 So. 429.

Appellants cite cases where acts which applied to counties of a certain population, or *more,* have been upheld as being general, and argue that Act No. 254 should be upheld because it applies to counties of a certain population, or *less.* Relying on Opinion of the Justices, 249 Ala. 511, 31 So.2d 721, appellants earnestly argue in brief as follows:

"It is thus seen that a *floor* as regards population was placed in a number of acts upheld by the Court. Here we have a *ceiling.* We submit that there is logically no distinction between the two in the right of the Legislature to make a classification as to population. As the larger counties, usually containing large industrial centers, come within the terms of legislation previously enacted, it is fairly certain that other counties will continue to decline in population. Is there any logical reason for denying the Legislature the right to take care of what, in its discretion, will be needed for their peculiar circumstances such as sparsely settled rural areas, by one general act, rather than by a series of local acts? As in other cases where increase in population was judicially noticed by the Court, the Court can now note a general decline in population.

*   *   *   *   *   *

"It would be a strange rule indeed which would uphold an act based upon probable *increase* in population of cer-

tain counties, and strike down another act because the Legislature looked to probable *decline* in population in certain areas of the State."

Appellants may be correct in their argument, but as to that we do not decide. The well-established rule to be here applied has been stated by this court as follows:

"* * * The effect of all of our decisions, in short, has been that where there is a substantial difference in population, and the classification is made in good faith, reasonably related to the purpose to be effected and to the difference in population which forms the basis thereof, and not merely arbitrary, it is a general law, although at the time it may be applicable to only one political subdivision of the state; *but that if the classification bears no reasonable relation to the diffcrence in population, upon which it rests, in view of the purpose to be effected by such legislation, and clearly shows it was merely fixed arbitrarily, guised as a general law, and, in fact, is a local law, it is then in plain violation of the Constitution and cannot be upheld.*" (Emphasis supplied.) Reynolds v. Collier, 204 Ala. 38, 39, 40, 85 So. 465, 467.

Thus we are brought to determine whether or not any reasonable relation exists between the purpose of the act and the classification adopted by the act. The only purpose of the act, as appears to us, is to provide a certain method for electing members of the county governing body. The questions to be answered are: What relation exists between the method of electing such officials and the population of the county? What consideration will apply to such method of election in a county of less than 11,800, which would not apply with equal force in a larger county? We have not found any reasonable relation between the purpose and the classification.

Appellants argue that in Coosa County some areas have increased in population, while other areas have declined at a much greater rate, and that the more densely populated areas might, if county officials be elected county-wide, gain control of the county governing body and thereby unfairly deprive sparsely settled areas of the benefits of county government. Such argument may or may not be correct. In either event, the choice of method of election is a question addressed to the legislature and is a matter with which we are not here concerned.

The argument fails to show any relation between the purpose of the act and the *total population of the county,* which is the basis of the classification used in the act. The argument does show a relation between the purpose of the act and the *distribution of population within the county,* but distribution of population is not the basis of the classification. A similar distribution may, however, and, in fact, does exist in counties having a population much greater than 11,800. In Jefferson, the county population is listed as 558,928, while that of the City of Birmingham is 326,037. The county population of Etowah is 93, 892, and that of the City of Gadsden is 55,725. The county population of Montgomery is 138,-965, while that of the City of Montgomery is 106,525. U. S. Bureau of the Census. U. S. Census of Population: 1950. Vol. I, Number of Inhabitants, Chapter 2: Alabama. U. S. Government Printing Office, Washington, D. C., 1951. In each of these examples, the population of one municipality is substantially more than half of the total population of the county, and, under appellants' theory, the city electors could dominate county-wide elections.

Appellants argue that "This Court has recognized that larger counties have problems differing from the problems of smaller counties and has upheld general acts with local application for such larger counties." We agree that in certain aspects of county government there may be differences between counties due solely to a difference in population. A law classifying counties on the basis of population may well be for a

purpose reasonably related to a difference in population. We do not think, however, that Act No. 254 has such a purpose. The purpose here sought to be accomplished might be as much or more desirable in a county of 50,000 with sparsely settled rural areas, as in a county of 11,800 or less population.

Problems arising because of increase of urban population and decrease of rural population are not confined to the smaller counties. We are of opinion that no reasonable relation exists between the purpose of Act No. 254 and the classification employed in the act, and, therefore, that said act is local and not general.

For a case where an act applying to counties of 300,000 or more population was held invalid because we were " * * * unable to see any logical relation between the classification here employed and the purpose to be attained," see City of Birmingham v. Moore, 248 Ala. 422, 424, 27 So. 2d 869, 871.

Section 106 of Constitution of 1901 concludes with the following command from the people:

"The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."

We are not unmindful of the rule that all reasonable intendments must be indulged in favor of the validity of legislative acts. Because, however, we are unable to avoid the conclusion that Act No. 254 is a local law of which notice was not given, it is our duty to declare, and we do, reluctantly, declare that said act is void.

Affirmed.

LIVINGSTON, C. J., and STAKELY and GOODWYN, JJ., concur.

LAWSON, SIMPSON and MERRILL, JJ., dissent.