139 So. 416

**WARD v. STATE ex rel. LEA.**

**6 Div. 16.**

Supreme Court of Alabama.

Jan. 28, 1932.

Cabaniss & Johnston, Herbert J. Ward, and R. B. Evins, all of Birmingham, for appellant.

Thomas J. Judge, of Birmingham, for appellee.

244

**GARDNER, J.**

This proceeding presents for review the constitutionality of the act approved July 17, 1931, purporting to establish "an inferior court in each city of the State of Alabama now or hereafter having, according to the last or any subsequent Federal census, a population of over 150,000." General Acts 1931, page 528.

There was no advertisement of this proposed act. It was passed as a general act, and the point most strenuously pressed, and upon which the lower court's decision rested, was that it was in fact a local law and void as violative of section 106 of our Constitution. For its generality the act rests upon a population classification, recognized under limited conditions, as a proper basis for classification by numerous decisions of this court. Walden v. City of Montgomery, 214 Ala. 409, 108 So. 231; State ex rel. Ward v. Henry (Ala. Sup.) 139 So. 278; [1] Board of Revenue v. Huey, 195 Ala. 83, 70 So. 744; State ex rel. Gunter v. Thompson, 193 Ala. 561, 69 So. 461.

◼ But the conditions justifying such classification are equally well established by our cases. The difference in population must be substantial, and the classification must be made in good faith and reasonably related to the purpose to be effected by the act. These conditions appearing, the fact that at the time the law may be applicable to only one political subdivision of the state, will not suffice for its condemnation. If, on the other hand, the classification is not in good faith, bears no reasonable relation to the difference in population upon which it rests in view of the purpose to be effected by such legislation, and was arbitrarily fixed, the law will be condemned as local, and as having been passed merely under the guise of a general law in violation of our Constitution. Reynolds v. Collier, 204 Ala. 38, 85 So. 465; State v. Gullatt, 210 Ala. 452, 98 So. 373; Vaughan v. State, 212 Ala. 258, 102 So. 222; State v. Weakley, 153 Ala. 648, 45 So. 175; Mobile County v. Byrne, 218 Ala. 5, 117 So. 83; Kearley v. Hamilton, 223 Ala. 548, 137 So. 424.

◼ In the application of these principles this court has recognized the rule that it is our duty to not construe a law as local when it is so worded and framed as to be interpreted as a general one, in order to save its constitutionality, resulting as it does from that other rule that before a statute is stricken as unconstitutional, the court must be convinced beyond all reasonable doubt. Reynolds v. Collier, supra; State v. Gullatt, supra; State v. Merrill, 218 Ala. 149, 117 So. 473.

We have condemned double classification which tended to confine the operation of the law to one particular locality (State v. Weakley, supra) for such a law results in designation rather than classification. Mobile County v. Byrne, supra.

◼ Statutes are to be construed as having a prospective operation, unless the contrary is expressed or necessarily implied, and hence in Griffin v. Drennen, 145 Ala. 128, 40 So. 1016, the act there involved was construed as to embrace all cities in the future reaching the population classification therein named. But in Henry v. Wilson (Ala. Sup.) 139 So. 259,[2] the court condemned the act because, as to its major features, future legislation was necessary for its operation. The writer, with whom Justice Foster concurred, entertained the view that the case of Board of Revenue v. Huey, 195 Ala. 83, 70 So. 744, cited approvingly in Stone v. State, 211 Ala. 601, 101 So. 62, as well as a number of other of our decisions, concluded to the contrary, and should be adhered to. We interpreted the Huey Case to make reference to legislation that was in good faith intended for better government or for the public convenience, and of such a nature as to bear relation to the act in question and to be reasonably anticipated. So interpreted, we considered the Huey Case applicable to Henry v. Wilson, supra, and rested our dissent thereon.

If, however, the required legislation must itself be narrow and arbitrary and an unanticipated freak of chance and "a turn of the wheel of fortune defying probabilities," then of course the act itself bears the marks of arbitrary classification, and is to be condemned as such. But, in either event, the requirement for future legislation is of evidentiary character, the effect of which is left to be determined as it arises under the peculiar conditions of each particular case. We have thought these observations not inappropriate as further explanatory of the views of the writer and Justice Foster in the Wilson Case, supra, as well as our views as applicable to the act here in question. These general observations suffice for a discussion of the case at hand.

---

[1] Ante, p. 224.

[2] Post, p. 261.

■ We judicially ·know by the population classification of 150,000 that the only city at present affected is the city of Birmingham, and approaching a consideration of the act here assailed, we think a preliminary survey of the inferior courts existing in Birmingham prior thereto is proper and which is concisely stated in the opinion of the learned trial judge, as follows:

"1. The Municipal Court of Birmingham (with two divisions—First and Third) having and exercising only the civil jurisdiction of Justices of the Peace in only seven of the precincts within or partly within said city, the numbers of said seven precincts being as follows: 9, 10, 21, 34, 36, 37 and 46; and with no other jurisdiction.

"2. The Inferior Court of North Birmingham (created by Local Act 1927, p. 388) having only the civil jurisdiction of Justices of the Peace in only. one precinct in the city of Birmingham, which is precinct No. 42. This court is by the terms of the act creating it a branch of the Third Division of the Municipal Court of Birmingham, and the judges of the First and Third Division of the Municipal Court of Birmingham are required to hold court one day each week in precinct 42 (North Birmingham).

"3. The Inferior Court of Ensley (with its principal place of holding court in precinct 45) having and exercising the civil jurisdiction of Justices of the Peace in only four of the precincts, lying within or partly within the City of Birmingham, said precincts being numbered 29, 45, 52 and 53; and having and exercising jurisdiction of misdemeanors committed in any of the 41 precincts that are not in the Bessemer cut-off and also in precinct 53 which lies in the Bessemer cut-off. The judge of the Inferior Court of Ensley was required by statute to maintain a branch office and to hold court at least one day each week in each of the following precincts: 29 (Pratt City), 52 (Wylam) and 53 (Fairfield).

"4. The Jefferson County Court of Misdemeanors having criminal jurisdiction only, but as this court is not affected by the act, the details of its jurisdiction need not be noted."

■ The act abolishes all inferior courts in cities of the prescribed size, save those having criminal jurisdiction only, and in lieu thereof establishes in all cities of 150,000 population an inferior court with civil jurisdiction only. So much is accomplished by the first twenty-five sections of the act, and as to which no objection thereto as a local law for a lack of generality could be successfully interposed. But in sections 26 and 27, though expressed in general terms, it deals with local conditions only, and undertakes affirmative legislation for a particular territory. As to section 26 the act provides that where, in any city to which it applies or may hereafter apply, there is at the time the act becomes applicable thereto a branch office of any court therein abolished at which the judge or judges of said court held regular weekly sessions for the trial of civil cases triable in the precinct where said branch office is located, there shall continue after the act goes into effect in such city to be maintained and held in such precinct a branch of the court hereby established at which the judge of the court hereby established shall hold a session one day each week for the trial of civil causes. There is only one city in the state, the city of Birmingham, whose inferior court has a branch office at which the judge or judges hold regular weekly sessions for the trial of civil causes triable in the precinct where the branch office is located, and the court referred to is the inferior court of North Birmingham, as directly as if called by name. That there should be future legislation in other cities to meet these special and peculiar conditions, is not reasonably to be anticipated and would rest upon the merest conjecture and a freak of chance.

■ Like observations are applicable to section 27 of the act, which clearly was designed for the establishment of a court in substitution for the inferior court of Ensley, existing prior to and abolished by the act in question, with its special and peculiar territorial jurisdiction and branch offices at three separate precincts; thus presenting a condition obtaining in no other city, and not reasonably to be anticipated by future legislation. We forego any detailed discussion of this section as unnecessary.

Suffice it to say the conclusion is irresistibly reached that these two sections, though containing generality of expressions, nevertheless point unerringly to particular territory and special conditions, and must come under the condemnation of affirmative local legislation. The conditions therein named constitute designation rather than classification. But, argues appellant, if so much be conceded and these two sections held invalid as local legislation, the remainder of the act is complete and capable of enforcement and the entire statute should therefore not be stricken (State v. Carter, 174 Ala. 266, 56 So. 974; Ex parte Elmore, 201 Ala. 313, 78 So. 89; State v. Murphy, 211 Ala. 663, 101 So. 465; Clemmons v. State, 20 Ala. App. 114, 101 So. 89), especially in view of the saving clause of section 28 (State v. Montgomery, 177 Ala. 212, 59 So. 294), wherein it is provided if any section of the act be declared unconstitutional this fact shall not affect any other section.

■■ It is strenuously insisted there is no "inseparable blending of the bad with the good." and that it may be presumed the Legis-

lature would have passed the Act with these two sections stricken therefrom. Notwithstanding such saving clause, as to whether or not the valid portion of a statute is immune from the invalidating effect the law gives the inseparable blending of the bad with the good, is still a judicial question. State v. Montgomery, supra. We think, however, there is here such inseparable blending, and that with sections 26 and 27 stricken there would follow results not contemplated or intended by the lawmakers.

The subject-matter of the whole bill was the establishment of an inferior court to have jurisdiction over all precincts lying wholly or partly within the city of Birmingham. As distinguished from the branch court with its associate judge provided for under certain conditions, the court to be presided over by the judge may be referred to as the principal inferior court which is to have civil jurisdiction only. With sections 26 and 27 stricken, this principal court would be established, but with no criminal jurisdiction whatever, and the branch courts abolished. But in the very first section of the act, after declarations as to the civil jurisdiction, is the further provision, "and said courts shall also have and exercise criminal jurisdiction as hereinafter conferred," and this criminal jurisdiction is found in section 27, meant as a substitute for the previously existing court at Ensley. The vital matter of criminal jurisdiction therefore referred to in section 1 is completed in section 27. Nor was it contemplated (any question as to his authority to do so aside) that the principal judge should do the work intended for the associate judge at Ensley, as very clearly the associate judge was created primarily for that very purpose. Nor would there be any provision made for pending criminal cases. The suggestion that they would go to the circuit court does not answer the situation, for it appears clearly the intention was that they should be tried in the inferior court. Nor could the express provisions of section 25 as to transfer of all pending causes be given full effect without section 27, since without this section the new court would be without criminal jurisdiction.

As previously noted the establishment of the branch courts was by way of substitution for the previously existing inferior court at Ensley and the North Birmingham court, and it is hardly conceivable that the Legislature would abolish these courts without establishing the substitutional courts provided in sections 26 and 27. Other reasons might be suggested, but we forego further discussion, as it appears we think very clearly there is such an intimate relationship existing between all parts of the act as to create an "inseparable blending of the bad with the good," so that to strike sections 26 and 27 and leave the remainder would cause results not contemplated or intended by the lawmakers. It results, therefore, as our opinion, that to strike down these two sections must invalidate the whole act.

We have thus treated this particular question in accord with the argument of counsel for the respective parties and stated our conclusion thereon. But we seriously doubt that the authorities treating such saving clause as section 28 of the act are applicable to this character of constitutional invalidity.

Sections 26 and 27 are condemned because containing affirmative legislation of a local nature, a constitutional infirmity that was remediable by due advertisement as provided by section 106 of the Constitution. Clearly, however, there could have been no compliance with this provision of the Constitution by advertisement of these two sections only, and the very fact therefore that to meet the requirements of our fundamental law in this regard the whole must be advertised and not merely a part, should suffice to demonstrate the inseparability of these sections from the whole act.

But the real and vital question here is one of good faith and when so important features of the act (essential, we think, to the completion and fulfilment of the legislative intent) are condemned as affirmative local legislation under the guise of a general law, the infirmity is such as to permeate the whole act and work its destruction.

The cases of State v. Pitts, 160 Ala. 133, 49 So. 441, 686, 135 Am. St. Rep. 79; Smith v. Stiles, 195 Ala. 107, 70 So. 905, and other authorities cited by appellant, had to deal with enactments which were clearly and in good faith general laws, and these authorities merely recognize the principle, not here questioned, that such general laws are not converted into local laws merely because as to every detail they do not operate throughout the entire state, or because qualified and limited in some of its details to meet local requirements and conditions. But in the instant case, we think the act is local in effect, and merely guised as a general law; though not one in good faith. And, as said in Holt v. City of Birmingham, 111 Ala. 369, 19 So. 735, 736, "The effect of a statute, more than its wording or phraseology, must determine its character as a public, general, special, or local statute." The above noted authorities are therefore without application here.

The following language of the New York court, in discussing a somewhat similar question In re Elm Street, 246 N. Y. 72, 158 N. E. 24, 25, finds application to the instant case: "If the act by its terms was applicable to a class, it did not cease to be general though the fact would appear * * * that it was local in effect. * * * Even then there was a point beyond which evasion was not suffered. Identifying tokens might be so many

and particular that classification would find an end and designation a beginning. * * * We close our eyes to realities if we do not see in ·this act the marks of legislation that is special and local in terms and in effect."

And likewise applicable is the language of our own court in Vaughan v. State, 212 Ala. 258, 102 So. 222, 223, speaking through Justice Somerville: "Judicial candor will not permit us to close our eyes to the patent fact that this act, both in its conception and in its calculated operation, was local in its character."

The attempted classification, the whole act considered, is so restrictive as to designate rather than classify, a character of classification, that cannot be sustained. Kearley v. State, 223 Ala. 548, 137 So. 424.

We should doubtless take account of appellant's insistence that section 26 does not apply to the North Birmingham court for the reason that this court had been abolished by what is referred to as House Bill 619 (Local Acts 1931, p. 195), which it is argued was an independent and valid enactment. We are of the opinion this argument loses sight of the fact that the local act abolishing the municipal court of Birmingham and making reference to the inferior court of Birmingham, to which the causes are to be transferred, was passed at the same time as the act here in question, both dealing with the same subject-matter and approved by the Governor on the same date. These acts therefore are in pari materia, and should be construed as one enactment. State v. Murphy, 207 Ala. 290, 92 So. 661; State v. Montgomery, 177 Ala. 212, 59 So. 294; 25 R. C. L. p. 1062; 36 Cyc. pp. 1147–1151.

Applying this rule of construction, therefore, the local act is to be construed as a part of section 25 of the act here in question, which section deals with the abolition of the court. So interpreted, therefore, the local act is ineffective, the act herein treated having been declared invalid.

We have considered the case with due regard to our duty to uphold rather than destroy a legislative enactment, unless convinced to the contrary beyond a reasonable doubt, but we cannot escape the conclusion that the act designates rather than classifies and must be held a local law passed under the guise of a general law.

The judgment of the trial court accords with these views, and will accordingly be here affirmed.

Affirmed.

All the Justices concur.

