25 So.2d 61

**DONOGHUE et al. v. BUNKLEY et al.**

**I Div. 245.**

Supreme Court of Alabama.

Feb. 28, 1946.

424

Francis H. Inge and Armbrecht, Inge, Twitty & Jackson, all of Mobile, for appellants.

Palmer Pillans, of Mobile (Pillans & Cowley, of Mobile, of counsel), for appellee Ennis.

Vincent F. Kilborn and Outlaw, Seale & Kilborn, all of Mobile, for other appellees.

LIVINGSTON, Justice.

The Circuit Court, in Equity, of Mobile County, Alabama, sustained demurrers to complainants' bill of complaint seeking a declaration of rights under the Declaratory Judgments Act, Title 7, section 156 et seq., Code of 1940, in respect to the provisions of Acts numbered 517, 518 and 459, enacted by the 1945 Legislature of Alabama. The bill also prays for injunctive and general relief.

This appeal is by virtue of section 755, Title 7, Code of 1940, authorizing an appeal to this Court from a decree of a circuit court, sitting in equity, sustaining or overruling a demurrer to a bill in equity.

Act No. 517 is as follows:

"To apply in, but only in, counties which have a population of not less than 140,000

nor more than 300,000, according to the last or any subsequent Federal Census, and which counties are wet counties as defined in section 68 of Title 29 of the Alabama Code of 1940; to require such counties to hold an election for the entire county on the date of the first Constitutional Amendment Election held in the State of Alabama after the final adjournment of the regular session of the Alabama Legislature for 1945; at which such election the following question shall be submitted to the qualified voters of said county: '1. Shall a license tax of 2 cents on each twelve fluid ounces, or fractional part thereof, of malt or brewed beverages sold, distributed, delivered, stored or taken out of storage within this county be levied in this county? Yes ———. No. ———'; and to provide for the declaration of the result of such election by the probate judge of such county.

"BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

"Section 1. In all counties of this State which have a population of not less than 140,000 nor more than 300,000 according to the last or any subsequent Federal Census, and which counties are wet counties as defined in section 68 of Title 29 of the Alabama Code of 1940, the Revenue and Road Commission or other governing body of such county shall call an election in such county to be in all respects the same as a general election for the selection of members of the House of Representatives of the Legislature of Alabama, provided that in all such counties where voting machines are now authorized or required by law the same must be used, which such election shall be held on the date of the first Constitutional Amendment Election held in the State of Alabama after the final adjournment of the regular session of the Alabama Legislature for 1945.

"Section 2. At the election provided for in section 1 hereof, the following question shall be submitted to the qualified electors of such county; '1. Shall a license tax of 2 cents on each twelve fluid ounces or fractional part thereof, of malt or brewed beverages sold, distributed, delivered, stored, or taken out of storage within this county be levied within this county? Yes. ——— No. ———.'

"Section 3. In all such counties the probate judge shall, within five (5) days after the date of such election, declare the result thereof by inserting in a newspaper of general circulation published in the county a tabulation of the total votes cast in said election; the total number of votes for the proposition submitted and the total number of votes against the proposition and in the event a majority of the number of votes cast shall be in favor of the proposition the probate judge shall declare the proposition adopted and the tax therein provided for to be levied; and if the majority of the number of votes cast shall be against the proposition the probate judge shall declare the same defeated and no tax as provided therein shall be levied.

"Section 4. This Act shall become effective immediately upon its passage and approval or upon its otherwise becoming a law.

"Approved July 6, 1945."

Analyzed briefly, Act No. 518 provided:

Title: To apply in, but only in, counties which have a population of not less than 140,000 nor more than 400,000 according to the last, or any subsequent Federal Census, and which counties are wet counties as defined in section 68, of Title 29, of the Code of Alabama of 1940; and to require the payment to such counties of a license tax, in addition to all other taxes and licenses now required by law, of 2 cents on each twelve fluid ounces, or fractional part thereof, of malt or brewed beverages sold, distributed, delivered, stored or taken out of storage within such counties; and to provide for the ascertainment, collection, payment and distribution of such license tax and for the enforcement of this Act; and to prescribe penalties and fix punishment for the violation of any of the provisions of this Act, and to fix the term of the effectiveness of the license tax levied hereunder.

Section 1 provides that the Act shall apply in counties which have a population of not less than 140,000, nor more than 400,000, according to the last or any subsequent Federal Census, and which are wet counties within the meaning of that term as defined in section 68, Title 29, Code of Alabama of 1940. The Act is made cumulative and additional to all other acts.

Section 2 is a definition section.

Section 3 (a) levies a license tax to counties coming under the law of 2 cents on each twelve ounces of beer, malt or brewed beverages sold, distributed, delivered, stored or taken out of storage in the county. The license is levied on each distributor

or seller (including retailers) so that a 2 cent license is levied in the hands of the wholesaler and an additional 2 cents in the hands of the retailer, with the retailer being able to exempt himself from his additional 2 cents tax by showing that he has bought from a wholesaler who paid.

(b)  sets out the method in which the retail dealer may claim his exemption.

(c)  provides that all who have not claimed the exemption (therefore the wholesale dealer) must file a report on or before the 30th day after the effective date of the Act on or before the 15th of every month thereafter, calculated to show the amount of tax owing from him.

(d)  provides for the payment of the 2 cents license tax reflected by the report made in accordance with the provisions of section 3 (c).  Payment is made to the probate judge or license commissioner or inspector, whichever authority is authorized by law to receive payment in the county. Failure to pay the license is a misdemeanor. Every day's default is a separate offense and a penalty of 20% of the amount of the license attaches.  All funds collected are paid by the governmental agency collecting them to the treasurer of the county. The treasurer of the county then must pay these sums to the public body corporate entrusted with the operation, management and control of the public schools of such counties subject to the tax.

Section 4 makes unlawful the selling of beer in counties under the Act by persons having no place of business in the county, without a permit from the probate judge.

Section 5 makes unlawful the engaging in business as a beer dealer, distributor or seller while in default of the payment of the license tax.

Section 6 exempts acts of interstate commerce, business of the United States or governmental agencies.

Section 7 makes it unlawful to work for a beer dealer in default.

Section 8 requires the keeping of records of purchases, sales, receipts and inventories and forbids the destruction of such records except after notice to the probate judge.  Each person subject to the Act must give information if requested to the probate judge, the license inspector or where one exists, the license commissioner. This section also provides for secrecy of information obtained.

Section 9 denounces the making of false reports.

Section 10 provides that if in any county in which this Act may become operative a commissioner of licenses exists, the duties vested in the probate judge are transferred to such a license commissioner.

Section 11 provides for fines for violation of the Act, provides certain duties on the license inspector where there is one and for the furnishing of forms and for payment of the expenses for such forms.

Section 12 is what is known as the severability section.

Section 13 is worded as follows: "This Act shall become effective immediately upon a declaration by the probate judge of such county that at a regularly and legally held referendum election the majority of the duly qualified electors voting therein voted in favor of adopting the tax levied herein, and upon this Act being made effective by the declaration of the probate judge that the majority of the qualified electors voting in such election voted in favor of adopting the tax levied herein, then this Act shall remain and continue in effect for a period of two (2) years from the date of such declaration."

Act No. 459 provides for the allocation of funds derived from taxes collected under the provisions of Acts Nos. 517 and 518.

A copy of each of the foregoing Acts is attached to and made a part of the bill of complaint.  In short, the bill alleges that complainants are distributors and sellers of beer in Mobile County, Alabama, within the meaning of said Acts; that respondent Frank Bunkley is commissioner of licenses for Mobile County, and that respondent Robert Ennis is license inspector for Mobile County, the enforcement agencies provided for in said Acts; that Mobile County, Alabama, is a "wet county" within the meaning of said Acts, and that the governing body of Mobile County called an election for submission of the question of levying a tax on beer in said county in pursuance of Act No. 517, to be held on October 2, 1945, which was the date which had been set by the Legislature for the first constitutional amendment election in the State of Alabama after final adjournment of the Legislature of 1945; that at said election the electors of Mobile County voted to levy said tax; that the probate judge of Mobile County in pursuance of

said Act No. 517 declared and published the result of said election on October 6, 1945; that if said Acts Nos. 517 and 518 are valid legislative enactments, complainants are now subject to their provisions and to the payment of the tax levied in pursuance thereof; that complainants have paid all licenses, fees and taxes required of them by the laws of the State of Alabama, with the exception of the tax required by the Acts Nos. 517 and 518; that respondents are threatening to strictly enforce the provisions of said Acts; that complainants believe that said Acts are unconstitutional and void, and have refused to comply with the provisions thereof pending a determination of their constitutional validity.

Respondents contend that the bill of complaint shows on its face that it is without equity; that complainants have a plain and adequate remedy at law; that no case for injunctive relief is made out; nor is a case made for a declaratory judgment.

Pertinent in answering the foregoing contentions are the following sections of the 1940 Code, Title 7:

"Section 156. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceedings shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The * * * declarations shall have the force and effect of a final judgment or decree.

"Section 157. Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

"Section 160. The enumeration in the three preceding sections does not limit or restrict the exercise of the general powers conferred in section 156 of this title, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.

"Section 161. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

"Section 164. When a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.

"Section 166. All persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney-general of the State shall also be served with a copy of the proceeding and be entitled to be heard.

"Section 167. This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respects to rights, status, and other legal relations; and is to be liberally construed and administered. This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees."

Our cases are in conflict, either apparent or real, as to whether a declaratory judgment is like an extraordinary legal remedy, to be denied when there is a regular action available, or like an equitable action, to be dismissed when there is an adequate remedy at law. See Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234; Berman v. Wreck-A-Pair Bldg. Co., 234 Ala. 293, 175 So. 269; Id., 236 Ala. 301, 182 So. 54; Thompson v. Chilton County, 236 Ala. 142, 181 So. 701; Bagwell v. Woodward Iron Co., 236 Ala. 668, 184 So. 692; Barlowe v. Employee Ins. Co., 237 Ala. 665, 188 So. 896; State v. Inman, 238 Ala. 555, 191 So. 224; Bond v. Avondale Baptist Church, 239 Ala. 366, 194 So. 833; Judd v. Dowdell, 244 Ala. 230, 12 So.2d 858; Birmingham Bar Ass'n v. Phillips, 239 Ala. 650, 196 So. 725; Glass v. Pru-

dential Ins. Co., 246 Ala. 579, 22 So.2d 13; Gambill v. Greenwood, ante, p. 149, 22 So. 2d 903.

Without stopping to analyze these cases, we think the following statement by Prof Borchard correctly states the rule:

"There are two general types of action in which declaratory relief is invoked: (1) where the plaintiff seeks a declaration he is privileged to act, or that he is not indebted to, or is immune from a liability asserted by, the defendant, or where he requests the construction of a disputed contract before breach, actions in which no coercive decree is sought or even possible; and (2) where the plaintiff, though capable of suing for an executory or coercive decree, contents himself with the milder declaration of rights as adequate to his needs and purpose.

"In the former group of cases, designed to negative a claim or cloud emanating from the defendant, a declaration of the plaintiff's privilege or immunity and of the defendant's no-right or disability is normally an exclusive remedy. In the absence of the declaratory judgment, there is usually no way in which such interests can be judicially protected, unless the defendant proceeds so far, by threats or violence, as to lay the foundation for an injunction. These cases, because they enable a plaintiff to look before he leaps and thus to escape peril, insecurity, and dilemna, attract more widespread attention. In this group may also be included those cases in which a plaintiff is enabled to have decided controversies over contract or statutory rights, including questions of construction, without the prior necessity of a purported breach of the contract or statute by either party. Parties may of course translate their respective claims into action, and await proceedings to enjoin, specifically perform or collect damages, or, with respect to statutes, prosecution for abatement, enforcement, or penalty. Declaratory relief enables the issue to be fairly tried, without the necessity of incurring such exceptional risks.

"Yet the second group of cases, though less spectacular, are entitled to equal consideration, for they manifest the important social function of deciding controversies at their inception—thus avoiding perhaps irretrievable catastrophe—and enable a plaintiff to seek a mild rather than a drastic remedy, with all its consequences. Any number of reasons may motivate such preferences—speed, simplicity, narrowing the issue, inexpensiveness, financial responsibility of the defendant, the desire to avoid a breach in social or economic relations, the adequacy of declaratory relief to the plaintiff's purpose. These cases assume that the operative facts, such as breach, which condition a traditional remedy, have occurred, and yet they recognize the value of an option in prayers for relief. They recognize that the prayer for relief does not condition or determine the cause of action and that the plaintiff, in the absence of some public reason, should have a free choice of remedies. They recognize also that the same state of facts may give rise to a variety of legal interests, justifying a variety of relief, and that it is not a judicial function to force upon the claimant a drastic remedy when a mild one will satisfy. Indeed, so revealing of the utility of flexibility in judicial therapeutics has been the declaratory judgment that plaintiffs asking for coercive relief alone or for both declaratory and coercive relief in combination or in the alternative have, in the exercise of judicial discretion, been granted a declaration only as adequate relief for their needs.

"It would seem clear that in the second group of cases the declaratory judgment is an alternative and entirely optional remedy, and that there is no justification ordinarily for the refusal of a declaratory judgment on the ground that an executory judgment was obtainable. The few courts in the United States that have so refused have overlooked or disregarded the purpose of the declaratory judgment, the practice in England and elsewhere, and the express terms of the statutes in practically all American jurisdictions. * * *

"The error has two causes, one historical, the other psychological. It is an old procedural prejudice that for every injury there is a single writ and unless that writ is used there is no remedy. The idea that there might be two ways to sue, two doors to the court-room, equally serviceable, runs counter to this prejudice. Yet it ought not to make any difference to judges through which door the petitioner enters the judicial forum, provided he is lawfully there and the court is in a position to give him relief. The other motive for denying declaratory relief when another action might have been possible is the fear that the declaratory action might replace other actions. * * * There is no basis in ex-

perience for this fear. Ninety percent of plaintiffs want coercive relief of some kind, by way of damages, injunction, specific performance or some other drastic remedy. That is why not more than one case in twenty involves a request for a declaratory judgment as such and it is not likely that the proportions will change greatly.

"There is no authority in the history of declaratory procedure for such a supposedly inherent limitation. The assumption that a declaration is like an extraordinary legal remedy, to be denied when there is a regular action available, or like an equitable action, to be dismissed when there is an adequate remedy at law, is unfounded. Even if it were true that the wrong remedy had been asked, modern practice codes usually provide that suits shall not be dismissed on that account, but that, if the court had jurisdiction to grant the proper remedy, appropriate amendments in process and pleading shall be ordered. Most of the cases in which these unsound views were expressed could have been dismissed on the simple ground that an action involving the identical issue was pending in another court, that another court, such as the Orphan's Court, had exclusive jurisdiction of the issue, or that a special statutory remedy had been provided for that particular type of issue." Borchard's Declaratory Judgments, 2d Ed., page 315 et seq.

The rule is exemplified also in a decision by Federal Judge Parker of the Court of Appeals for the Fourth Circuit where in the case of Stephenson v. Equitable Life Assurance Society, 4 Cir., 92 F.2d 406, 408, he remarked:

"The fundamental error of the court below consists in assuming that a proceeding for a declaratory judgment may not be maintained where another remedy is available. There is nothing in the act which limits its application to suits in equity or which suggests that the availability of other remedies shall preclude its use. On the contrary, the provision in the first paragraph for pleading by 'declaration,' as well as by complaint or petition, and the provision in the third paragraph for jury trial show clearly that declaratory judgments in legal as well as equitable proceedings were contemplated; and that the remedy provided was intended as an alternative one in cases where other remedies are available is shown by the provision of the first paragraph that such judg-

ments may be rendered 'whether or not further relief is or could be prayed.' As pointed out by Prof. Borchard in his Declaratory Judgments, at pages 147, 148, there are two types of action in which declaratory relief is invoked: (1) Where the plaintiff seeks a declaration under circumstances wherein no coercive decree is possible; and (2) where the plaintiff, though in position to sue for an executory or coercive decree, 'contents himself with the milder declaration of rights as adequate to his needs and purposes.' In the first class of cases the declaratory judgment is the exclusive remedy, but only because no other remedy is available. In the second class the declaratory judgment is available because the plaintiff is content with the mere declaration for which the statute provides even though he might have a coercive judgment or decree by asking it. "The Federal Declaratory Judgment Act is a regulation of procedure providing a new remedy for application in actions at law and suits in equity within the jurisdiction of the federal courts; and there is nothing to suggest that its use is to be confined to cases in which no other adequate remedy is available."

■■ Where a special statutory procedure has been provided as an exclusive remedy for the particular type of case in hand, that specific recourse must be followed. And section 161, Title 7, Code of 1940, provides that "The court may refuse to render or enter a declaratory judgment or decree when such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." The courts will not render purely advisory opinions nor decide moot cases under the guise of declaratory judgments.

■ Clear enough, the averments of the bill here considered show the existence of substantial controversies between the parties which are justiciable. The fact, if it be a fact (which we do not decide), that complainants may pay the tax and sue for its recovery, is of no moment.

This Court has consistently held that taxpayers cannot resort to a court of equity "to enjoin the collection of a tax claimed to be illegal, unless with the illegality of the tax there is connected some recognized ground of equitable jurisdiction." Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25, 28, and cases there cited.

But this is not to say that a bill combining alternative or cumulative prayers for relief, declaratory and coercive, is objectionable. The discretionary power of courts to attune relief to need, even on occasion the needlessness of specifically asking for declaratory relief, is evidenced by the numerous instances in which coercive relief has been requested, but in which the court issues a declaration of rights as adequate or more appropriate to the situation. Brochard's Declaratory Judgments, 2d Ed., p. 428.

■ In the instant case, if the court declares the taxing statutes unconstitutional that will end the entire controversy because there is no probability that any one charged with the duty to enforce the statute will attempt to do so in the face of such a declaration. The court may therefore disregard the prayer for injunctive relief and proceed to a declaration. See Nachman v. State Tax Commission, 233 Ala. 628, 173 So. 25; Berman v. Wreck-A-Pair Bldg. Co., 234 Ala. 293, 175 So. 269.

There is no merit in the objections to the bill which we have set out hereinabove.

■ Section 166, Title 7, Code, provides that all persons shall be made parties to a declaratory judgment proceeding who have or claim any interest which would be affected by the declaration. Appellees insist that the Board of School Commissioners of Mobile County should have been made parties in the instant proceedings. Act 518 provides that all taxes collected under the Act shall be paid by the governmental agency collecting them to the treasurer of the county, and by the county treasurer to the public body corporate entrusted with the operation, management and control of the public schools of said county. The controversy here is between the officers charged with the duty of enforcing the provisions of the Act and complainants. The Board of School Commissioners is not a necessary party.

We turn now to a determination of the constitutionality of the legislative acts involved.

Act No. 517 must stand or fall on its footing as a general law as defined in section 110 of the Constitution of Alabama of 1901. Admittedly, no attempt was made to comply with section 106 of the Constitution, supra, requiring publication of notice of the intention to apply for the passage of a local act. This Act (517) is set out above. It provides for only one election to be held, and fixes the time for holding said election as "the date of the first constitutional amendment election held in the State of Alabama after the final adjournment of the regular session of the Alabama Legislature for 1945." And it will be noted also that such election is to be held only in "wet counties" (section 68, Title 29, Code of 1940) with a population ranging between 140,000 and 300,000, according to the last or any subsequent Federal Census.

■■ A general law within the meaning of our Constitution is a law which applies to the whole State: a local law is one which applies to any political subdivision or subdivisions of the State, less than the whole. Section 110, Constitution of 1901.

■ Act No. 517 provides specifically for *but one election,* and that election to be held on the date of the first constitutional amendment election held in the State of Alabama after the final adjournment of the regular session of the Alabama Legislature of 1945. There can be but one election, and that on the date named in the Act. Can we say that, on that date, whatever day it may be, there is a possibility that each and every county in the State will be a "wet county," as contemplated by the Act, and also within the population designations of the Act? Such a situation, or culmination of events might occur, but by the merest unanticipated freak of chance, a turn of the wheel of fortune defying probabilities. The Act itself bears the marks of arbitrary classification and must be condemned. Ward v. State ex rel. Lea, 224 Ala. 242, 139 So. 416.

■ Further, Act No. 517 is violative of section 212 of the Constitution of Alabama of 1901, which is as follows: "The power to levy taxes shall not be delegated to individuals or private corporations or associations."

As said in Re Opinion of the Justices, 232 Ala. 56, 166 So. 706, 709: "It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other. This is a principle which pervades our whole political system and when properly understood admits no exception. And it is applicable with peculiar force to the case of taxation. The power to tax is the legis-

lative power. The people have created a legislative department for the exercise of the legislative power; and within that power lies the authority to describe the rules of taxation and to regulate the manner in which those rules shall be given effect. The people have not authorized this department to relieve itself of the responsibility by a substitution of other agencies." See, also In re Opinion of the Justices, 232 Ala. 60, 166 So. 710.

■ Act No. 518. The three legislative acts under consideration were all passed on the last day of 1945 session of the Alabama Legislature, and were approved by the Governor on July 6, 1945. The general rule is that statutes or statutory provisions which relate to the same person or thing, or to the same class of persons or things, or to the same or closely allied subjects or objects, may be regarded as in pari materia. American Standard Life Ins. Co. v. State, 226 Ala. 383, 147 So. 168; Ex parte Howard-Harrison Iron Co., 119 Ala. 484, 24 So. 516, 72 Am. St.Rep. 928. And the rule applies with particular force to statutes which are enacted at the same time, or about the same time because of the fact that the situation presents the same men acting on the same subject, and the presumption is that the acts were imbued with the same spirit and actuated by the same policy.

In Ward v. State ex rel. Lea, supra, it was held that two acts passed at the same time, both dealing with the same subject matter and approved by the Governor on the same day were in pari materia, and should be construed as one enactment.

■ Section 13 of Act No. 518 is set out above in full. It is clear enough that the referendum election mentioned in said section 13 is the referendum election contemplated in Act No. 517. Any other construction would render section 13, supra, meaningless. The section itself does not provide for the calling of a referendum election. No such provision is found anywhere in Act No. 518. To construe section 13, supra, to provide for the calling of an election is to render it obnoxious to section 45 of the Constitution of Alabama of 1901, for the reason that the calling of a referendum election is not embraced in the title of the Act 518, and is not cognate or germane to it.

Properly construed section ̬13, supra, contemplates the election provided for in Act No. 517. That Act we have declared unconstitutional as violative of section 106 of the Constitution; a local act passed under the guise of a general law and section 13, supra, must go down with it.

We close our eyes to realities if we do not see in Acts 517 and 518 one common purpose, one general scheme or plan, aimed at the accomplishment of the same result— a tax on the sale and distribution of beer, and levied by a vote of the electors in a referendum election called for that purpose. And judicial candor will not permit us to close our eyes to the other and further patent fact, that no part of the scheme or plan would have been adopted by the Legislature without the referendum feature. It follows that the entire plan must fail. Perhaps there are other reasons for striking down Acts 517 and 518, but we forego further discussion. See Ward v. State ex rel Lea, supra.

■ We have considered the case with due regard to our duty to uphold, rather than destroy, a legislative enactment, unless convinced to the contrary beyond a reasonable doubt, and with due regard to the saving clause in Act 518, but we cannot escape the conclusion that the entire scheme or plan is contrary to our Constitution.

It goes without saying that Act No. 459 has no field of operation without Acts 517 and 518.

■ The majority of the Court, consisting of Gardner, C. J., Brown, Foster, Lawson, Simpson and Stakely, JJ., upon the question of remedy above treated, prefer to concur in the conclusion only of the writer. Our authorities are to the effect that ordinarily resort is not to be had to the declaratory judgment statute, Title 7, section 156 et seq., Code of 1940, if adequate relief and appropriate remedy are presently available to the complaining party through the means of other existing forms of actions or proceedings. State v. Inman, 238 Ala. 555, 191 So. 224; Judd v. Dowdell, 244 Ala. 230, 12 So.2d 858; Glass v. Prudential Ins. Co., 246 Ala. 579, 22 So.2d 13; Bagwell v. Woodward Iron Co., 236 Ala. 668, 184 So. 692; Berman v. Wreck-A-Pair Bldg. Co., 236 Ala. 301, 182 So. 54, and authorities therein cited.

We have held that it was not the purpose of the declaratory judgment statute that its jurisdiction be extended to all cases

and leave no field of operation of other well-known remedies.

There are exceptions to this general rule, and in exercising the jurisdiction much must of necessity be left to the sound judicial discretion, as pointed out in numerous cases cited in the notes to the text of 1 Corpus Juris Secundum, Actions § 18, pages 1033, 1037. In State v. Inman, supra, we made note of some of these exceptions, such as cases involving public rights or important public matters; and in Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273, the Court observed that controversies to which the legalities of action of public officials or public agencies challenged by parties whose interests are adversely affected is one of the favored fields for declaratory judgments, and that official action done or threatened challenged as unlawful, the usurpation of official power, whether the lack of authority appears in the terms of the statute or because of its unconstitutionality, are said to be determinable in this manner rather than force the parties to seek injunctive relief, which involves many questions going to the propriety of such relief. See Lang v. City of Mobile, 239 Ala. 331, 195 So. 248; Klein v. Jefferson Bldg. & Loan Ass'n, 239 Ala. 460, 195 So. 593; Thompson v. Chilton County, 236 Ala. 142, 181 So. 701; Lisenba v. Griffin, 242 Ala. 679, 8 So.2d 175.

Following this line of reasoning, we have considered this form of remedy as applicable to controversies arising in cases involving the sales tax. See Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So.2d 479, where this form of remedy does not seem to have been questioned. See, also, Southern R. Co. v. Curry, 239 Ala. 263, 194 So. 523; International Paper Co. v. Curry, 243 Ala. 228, 9 So.2d 8; State v. Louis Pizitz Drygoods Co., 243 Ala. 629, 11 So.2d 342; Lone Star Cement Co. v. State Tax Comm., 234 Ala. 465, 175 So. 399; Nachman v. State Tax Comm., 233 Ala. 628, 173 So. 25; Frazier v. State Tax Comm., 234 Ala. 353, 175 So. 402, 110 A. L.R. 1479; Doby v. State Tax Comm., 234 Ala. 150, 174 So. 233; City Paper Co. v. Long, 235 Ala. 652, 180 So. 324; Long v. Poulos, 234 Ala. 149, 174 So. 230; City of Enterprise v. Fleming, 240 Ala. 460, 199 So. 691; Ex parte State ex rel. Lawson, 241 Ala. 304, 2 So.2d 765.

The instant case bears close analogy to such a situation. Indeed, it is in a sense

a sales tax. The demands made are constantly, and indeed daily, recurring and the taxpayer will be threatened with prosecution for recurring violations. He will be left in a state of uncertainty and required to pay numerous small sums involving a multiplicity of suits. In the exercise of a sound discretion we think it entirely appropriate that the declaratory judgment statute be invoked. .

In all cases involving the question of remedy, emphasis must be laid upon the matter of the adequacy of the remedy, not so much whether or not there is a remedy but whether or not it is plain and adequate to meet the ends of justice. In Glass v. Prudential Ins. Co., supra, there was but one annual tax to be paid, and the lawmaking power had, by an Act approved in 1943, p. 369, passed an amendatory statute (now appearing in the 1943 Cumulative Pocket Part, Code of 1940, as sections 890 and 891 of Title 51), so as to provide a plain and adequate remedy for a refund of the taxes paid if found to be illegally exacted of the taxpayer.

In view, therefore, of this plain remedy, peculiarly adapted to such a situation, the holding was the declaratory judgment statute was not available.

We are of the opinion the instant case is readily differentiated from Glass v. Prudential Ins. Co., supra, and presents a situation justifying resort to this remedial statute.

And upon the question of the application of section 106 of the Constitution, as discussed by the writer of the opinion, the same majority also prefer to rest their concurring conclusion as to this particular feature upon the following reasoning: The Act referred to was passed on the last and sixtieth day of the regular 1945 session of the Legislature, i.e., June 29, 1945, and final adjournment was to take place on that date. Prior to the passage of the Act there had been duly passed an act calling a constitutional amendment election to be held on the first Tuesday following the expiration of three months after the final adjournment of the 1945 regular session of the Legislature. It was passed by the House on May 17, 1945, and by the Senate on June 12, 1945. The Legislature, therefore, knew when this act was passed—and as we have observed, on the last legislative day—that the election for the constitutional amendment referred to would fall on October 2, 1945. We are therefore persuaded

that very definitely the Legislature had in mind this date of October 2, 1945, for the election to be held as therein provided. It was so held, and subsequent events demonstrate the correctness of this view.

■ The Act provided double classification, i. e., of counties not less than 140,000 nor more than 300,000, and then only in such counties as were designated as "wet counties." With the affixed date of October 2, 1945, for the election any matter of subsequent Federal Census could be of no consequence. As the Court judicially knows, the next Federal Census will not be before 1950. This was designation rather than classification—in substance and effect a local law masquerading as a general law. Mobile County v. State, 240 Ala. 37, 197 So. 6; Birmingham Electric Co. v. Harry, 215 Ala. 458, 111 So. 41; Ward v. State ex rel. Lea, 224 Ala. 242, 139 So. 416; Brandon v. Chambers, 229 Ala. 327, 157 So. 235; Moses v. Tigner, 229 Ala. 645, 159 So. 258; Kearley v. State, 223 Ala. 548, 137 So. 424; Henry v. Wilson, 224 Ala. 261, 139 So. 259.

For the reasons above noted we concur in the conclusion of the writer of the opinion that the Act was in violation of section 106 of the Constitution.

Reversed and remanded.

GARDNER, C. J., and BROWN, FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur as indicated.