SHAW, Justice
(concurring in part and concurring in the result).
I agree with much of the discussion in the main opinion, and I concur that the trial court’s judgment is due to be affirmed. I write to make several observations.
I. Conflict Between § 106 and § 122
There is no facial conflict between Ala. Const. 1901, Art. IV, § 106, and Art. V, § 122. The possible conflict alleged by Jefferson County (“the County”) is “latent”; it does not exist on the face of the two sections, but, instead, arises upon consideration of certain hypothetical scenarios. Specifically, the County notes that § 122 is designed to allow for the governor to call a special session to address extraordinary or emergency situations. See Opinion of the Justices No. 173, 275 Ala. 102, 103, 152 So.2d 427, 428 (1963) (“The clear import of [§ 122] is that it provides the machinery for convening the legislature because of extraordinary, or emergency, situations calling for legislative action in the interim between the regular meetings of the legislature.”). The County con *841 tends, however, that the four-week notice period of § 106 could, in certain situations, conflict with the need to expeditiously enact a local law in a special session. Stated differently, the County argues that a special session may be called in an emergency situation where a local law must be enacted in less time than the notice provision of § 106 would allow.
Such a hypothetical conflict does not exist in this case; in fact, one can envision numerous situations in which a local law can be enacted in accord with the time frame for notice provided in § 106. This case is just one such example. In interpreting the constitution, courts must give each section effect and, if possible, construe it so as not to create a conflict:
“It is established as a rule of interpretation of constitutions that the whole of such instrument or ordinance will be given effect, if possible; that is, that each section, clause and word thereof be given effect, if it can be so construed and not in conflict with other plain provisions of organic law.”
State ex rel. Fowler v. Stone, 237 Ala. 78, 83, 185 So. 404, 407-08 (1938). See also State ex rel. Covington v. Thompson, 142 Ala. 98, 107, 38 So. 679, 682 (1905) (“Constitutions are made for practical purposes, and not merely for the exercise of critical gymnastics, and in the construction of them ... we are, if possible, to give the instrument such construction as will carry out the intention of the framers, and make it reasonable rather than absurd.”). The County’s argument that this Court should find a conflict between § 106 and § 122 based on certain hypothetical scenarios is unpersuasive. Any perceived inadequacies concerning the interplay between § 106 and § 122 would be more appropriately addressed by the people of Alabama by amending the constitution.
II. Justiciability
This case does not present a nonjusticia-ble political question. First, nothing in the plain language of § 106 requires such a holding. The final sentence of § 106 states: “The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section.” The argument is advanced that, based on this sentence, the courts are limited to looking only at “the journals” in determining whether a local law “was passed in accordance with the provisions of’ § 106. Because the textual history of § 106 belies any intention to limit the scope of judicial review in this manner, I must disagree.
Specifically, before its amendment in 1975 by Ala. Const. 1901, Amendment No. 341, § 106 required that proof that notice had been given would be by an affidavit, and that affidavit would be “exhibited” to each house of the legislature and “spread upon the journal.”[12] For all that appears, *842 the last sentence mentions “the journals” because that is where the text of documents demonstrating compliance with § 106 would be found.
Amendment No. 341 deleted the requirement that an affidavit be placed in “the journal” as proof of publication; instead, the proof that the notice has been given is now exhibited to the legislature through a certification, which is not required to be “spread upon the journal.” Now, under § 106 as amended, both notice and proof are attached to the bill, and all three items are filed in the Department of Archives and History and “constitute a public record.”
The last sentence of § 106 places an affirmative duty on the courts to review whether a local law was passed in accordance with the requirements of § 106. To interpret the reference in that section to “the journals” as constituting a restraint on the courts would mean that, after the adoption of Amendment No. 341 in 1975, courts are restricted to looking only at the journals of the House of Representatives or the Senate, where the documents that demonstrate compliance with § 106 are no longer required to be “spread,” but are forbidden to look at the public record, where the notice and proof and the original copy of the subject bill are now required to be kept. Such a result would be absurd.
In Birmingham-Jefferson Civic Center Authority v. City of Birmingham, 912 So.2d 204 (Ala.2005) (“BJCCA”), this Court, applying the test found in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), held that under the separation-of-powers doctrine found in Ala. Const. 1901, Art. III, § 43, the judicial branch did not have jurisdiction to interpret legislative rules and procedures when the constitution specifically granted the legislature the power to establish rules regarding its own proceedings. Thus, a challenge to a bill on the issue whether the bill was passed under the legislature’s procedures with a sufficient number of votes created a nonjusticiable political question. In the instant case, the County contends that, under BJCCA and Baker, this Court similarly cannot review whether the notice was proper under § 106. In BJCCA we discussed the test in Baker as follows:
“ ‘It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court’s undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.’
“[Baker], 369 U.S. at 217, 82 S.Ct. 691. The presence of one or more of the factors listed in Baker v. Carr indicates that a question is ‘political,’ that is, one reserved for, or more suitably determined by, one of the political branches *843 of government. If a question is one properly to be decided by the executive or legislative branch of government, rather than by the judicial branch, we will not decide it.”
912 So.2d at 214-15 (footnote omitted; all alterations except final alteration in BJCCA). The County contends that all six Baker factors militate against the court’s exercising jurisdiction over the § 106 issue in this case. I disagree.
As discussed above, § 106 commands the courts to review whether the passage of a local law complies with the provisions of § 106. Thus, § 106 actually commits to the judicial branch the role undertaken in this case. There can be no “textually demonstrable constitutional commitment of the issue” or the “impossibility of a court’s undertaking independent resolution without expressing lack of the respect due coordinate branches of government,” because the very text of § 106 commands such a judicial role in the decision-making process. BJCCA, 912 So.2d at 214-15. Because § 106 explicitly gives the courts the final word on whether a local law was passed in accordance with that section, there is no need for “unquestioning adherence” to the legislature’s certification, and a holding by the courts that the notice is insufficient cannot result in “embarrassment from multifarious pronouncements by various departments.” BJCCA, 912 So.2d at 915. Further, there is no “lack of judicially discoverable and manageable standards for resolving” whether the passage of a local law complies with § 106; as the main opinion correctly notes, “numerous cases from this Court have assessed the adequacy of notice under the constraints of § 106 to determine the constitutionality of challenged legislation.” 69 So.3d at 837. Finally, there is no need for a “policy” determination in resolving this issue, because the “policy” of § 106 has been made clear:
“The Constitutional Convention of 1901 addressed itself to the task of preventing the growing evil of local legislation. ... Section 106 throws certain safeguards around special, private, or local laws not forbidden by the Constitution. It declares no such law shall be passed unless notice of the intention to apply therefor, stating the substance of the proposed law, shall have been published at least once a week for four consecutive weeks in some newspaper published in the county; that proof of such notice be made by affidavit and spread upon the journals. The courts are enjoined to pronounce void all such laws if proof does not affirmatively appear in the journals. This court has been called upon in numerous cases to construe and enforce these and other provisions governing the passage of laws by the Legislature.”
Byrd v. State ex rel. Colquett, 212 Ala. 266, 268, 102 So. 223, 225 (1924) (overruled on other grounds, St. Elmo Irvington Water Auth. v. Mobile County Comm’n, 728 So.2d 125, 127 (Ala.1998)).[13] The courts act consistently with the policy and dictates of § 106 by reviewing whether a local law was properly passed under that section.
III. The Adequacy of the Notice
The text of Act No. 2009-811, Ala. Acts 2009 (“the 2009 Act”), deviates materially from the published notice in several respects. The notice accepted by the legislature in this case states, in pertinent part:
“A BILL TO BE ENTITLED AN ACT Relating to Jefferson County, to reenact Act 406 of the 1967 Regular Session (Act 1967, p. 1032), to authorize *844 an occupational tax in Jefferson County; to remove the exemptions originally provided in Act 406, to provide for the distribution of the revenues received from the Jefferson County occupational tax; and to expressly repeal Act 99-669, 1999 Special Session.”
The plain language of the notice thus anticipated that the local law would revive Act No. 406, Ala. Acts 1967, “to authorize an occupational tax in Jefferson County.”[14] The notice also indicated that the exemptions in Act No. 406 would be removed. In other words, according to the notice, Act No. 406 would be revived, with its exemptions removed, but only to the extent it authorized an occupational tax.
The 2009 Act, however, is dramatically different. Specifically, it seems to have authorized two different taxes. The first tax authorized was through the reenactment of Act No. 406 with the original exemptions removed but was not limited solely to an occupational tax. The authority for that tax expired on December 31, 2009.[15] Further, under section 4[16] of the 2009 Act, a different tax, described as “an occupational or license or privilege tax upon any person for engaging in any business in the county,” was to be authorized beginning on January 1, 2010.[17] Certain exemptions for this particular tax were created in the 2009 Act.
It is clear that, although Act No. 406 was revived by the 2009 Act and stripped of its exemptions in accord with the notice, the 2009 Act, contrary to the notice, retroactively authorized more than “an occupational tax in Jefferson County.” Further, the 2009 Act included a completely new authorization, unmentioned in the notice. That authorization allowed, in addition to an occupational tax, what the parties describe as a “business-license tax,” which tax was not disclosed in the notice.[18] Further, this second authorized tax contains certain exemptions. Thus, the notice indi *845 cated that the legislature intended to consider reenacting only an occupational tax without the original exemptions, but the legislature actually enacted an occupational and business-license tax that does contain exemptions. Because the notice did not mention these aspects of the legislation, it failed to state the substance of the 2009 Act. Thus, the 2009 Act was passed in violation of the notice requirements of § 106 and is, therefore, unconstitutional.
APPENDIX
AN ACT
Relating to Jefferson County; to reenact Act 406 of the 1967 Regular Session (Acts 1967, p. 1032), to authorize an occupational tax in Jefferson County; to remove certain exemptions originally provided in Act 406; to expressly repeal Act 99-669, 1999 Second Special Session; to ratify and confirm the actions of the county governing body in previously levying and collecting the taxes levied under Act 406 and to provide that the provisions hereof are retroactive and curative to the extent herein set out; to provide for a referendum; and to provide that if a majority of the voters vote against the continuation of the tax, the authority to levy the tax would be phased out.
BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. This act shall apply only to Jefferson County.
Section 2. As used in this act, the following words and terms shall have the meanings ascribed to them:
(1) BUSINESS. Business, vocation, occupation, calling, or profession.
(2) COUNTY. Jefferson County.
(3) GOVERNING BODY. The Jefferson County Commission.
Section 3. The purpose of this act is to reenact Act 406 of the 1967 Regular Session (Acts 1967, p. 1032) without the exemption originally granted by Act 406 to any person required to pay a privilege or license tax to the state or the county by Article 1, Chapter 20, Title 51 of the Code of Alabama 1940.
Section 4. The governing body of the county is authorized to levy an occupational or license or privilege tax upon any person for engaging in any business in the county for which the person is not required by law to pay any tax pursuant to Section 40-16-4, 40-21-50, 40-21-52, 40-21-53, 40-21-56, or 40-21-60 of the Code of Alabama 1975.
Section 5. The tax hereby authorized to be levied shall be paid to that officer or employee of the county chargeable with the duty of collecting license or privilege taxes payable to the county.
Section 6. The tax authorized to be levied by the governing body of the county on any person for engaging in any business may not exceed the rate of forty-five hundredths of one percent (.0045) of compensation, excluding benefits, or net income before taxes, whichever is less, of business activity conducted in the county. The tax may not be increased without the approval of the Alabama Legislature.
Section 7. All actions of the governing body in continuously levying, collecting, and enforcing the levy of the county occupational and license taxes pursuant to Act 406 since the time of the initial levies thereof, particularly from and after the effective date of Act 99-669, 1999 Second Special Session (Acts 1999, p. 168) are hereby ratified, validated, and confirmed. This act is therefore intended to be retroactive and curative to November 29, 1999; and all the exemptions originally provided in Act 406 shall remain in effect, except for the exemption for any person required to pay a privilege or license tax to the state or the county by Article 1, Chapter 20, Title 51 of the Code of Alabama 1940, which shall expire January 1, 2010, and the *846 rate of tax shall be the rate at which the tax was levied on the effective date of this act until January 1, 2010, at which time the maximum shall be the rate specified in Section 6. On and after January 1, 2010, the county governing body shall have no authority to levy an occupational tax under Act 406.
Section 8. The tax authorized to be levied by this act shall be phased out commencing October 1, 2012, unless its authorization is approved at a referendum held on the date of the primary election in June 2012. If a majority of the votes cast at the referendum are in favor of the continued authorization of the occupational tax, the tax shall continue to be authorized. If a majority of the votes cast at such referendum are not in favor of the continuation of the authorization of the occupational tax, the governing body is authorized to phase out the tax over a five-year period commencing October 1, 2012, with the rate of the tax reduced by 20 percent on October 1, 2012, and October 1 of each year for four years thereafter, at which time the tax shall terminate.
Section 9. All laws or parts of laws which conflict with this act are repealed, and Act 99-669, 1999 Second Special Session (Acts 1999 Second Special Session, p. 168), is expressly repealed.
Section 10. If any provision of this act shall be held by any court of competent jurisdiction to be invalid, such invalidity shall not affect any other provisions of this act and the act shall be given full force and effect as completely as if the invalid provision had not been included.
Section 11. This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.
Approved August 14, 2009.

. Section 106 originally provided, in pertinent part:
"No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties, or if there is no newspaper published therein, then by posting the said notice for four consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof by affidavit that said notice has been given shall be exhibited to each house of the legislature, and said proof spread upon the journal. The courts shall pronounce void every special, private, or local law which the journals do not affirma *842 tively show was passed in accordance with the provisions of this section.”

. Byrd was decided before Amendment No. 341 was ratified. However, the “policy” of § 106 remains unchanged by that amendment.

. The phrase, "to authorize an occupational tax in Jefferson County" is joined to the phrase "to reenact Act 406 of the 1967 Regular Session" by a comma; it appears that the phrase "to authorize an occupational tax in Jefferson County” thus modifies or restricts the phrase "to reenact Act 406 of the 1967 Regular Session” and is separate from the rest of the items in the sentence by virtue of the subsequent semicolons.

. Section 7 of the 2009 Act provides in part: "On and after January 1, 2010, the county governing body shall have no authority to levy an occupational tax under Act 406."

. Section 4 of the 2009 Act provides:
"The governing body of the county is authorized to levy an occupational or license or privilege tax upon any person for engaging in any business in the county for which the person is not required by law to pay any tax pursuant to Section 40-16-4, 40-21-50, 40-21-52, 40-21-53, 40-21-56, or 40-21-60 of the Code of Alabama 1975."

. Under section 8 of the 2009 Act, authorization for this tax was to be "phased out commencing October 1, 2012, unless its authorization is approved at a referendum....”

.The County contends that the phrase "occupational tax” in the notice would also indicate that a "license or privilege tax” could be enacted. Specifically, the County argues that there is no clear distinction between license, occupational, and privilege taxes. I find this argument unpersuasive. Specifically, Ala. Code 1975, § 40-12-31, describes “occupational taxes” as being "imposed on an individual’s engaging in any occupation, business, or profession without any regard to whether he or she has a license to, or pays a license tax or fee in order to, carry on that occupation, business, or profession.” (Emphasis added.) The 2009 Act, however, specifies a far more expansive tax. Instead of authorizing a tax on an "individual’s engaging in any occupation, business, or profession,” it also authorized a "license or privilege tax upon any person for engaging in any business in the county.” (Emphasis added.) See Ala.Code 1975, § 1 — 1—1(1) ("The word ‘person’ includes a corporation as well as a natural person.").